O'DONNELL *v.* OLIVER IRON MINING CO.

1. EVIDENCE—HYPOTHETICAL QUESTIONS.
   Party propounding hypothetical question has duty of formulating proper one.

2. SAME—MAY NOT BE BASED ON CONTRADICTORY TESTIMONY.
   Hypothetical question which referred in general manner to very lengthy testimony of other witnesses, some of which was contradictory, was not proper question to submit.

3. WITNESSES—EXPERT TESTIMONY—HYPOTHETICAL QUESTIONS.
   Without proper hypothetical questions, in which all facts from which experts were to draw their conclusions were stated, it was error to interrogate expert witnesses.

4. EVIDENCE—MINES AND MINING—SUBSIDENCE—SURFACE SUPPORT—LATERAL SUPPORT—NEGLIGENCE.
   In action against mining company for damages to plaintiff's house, alleged to be due to subsidence, owing to defendant's failure to furnish lateral and subjacent support for surface

upon which said house stood, it was error to admit testimony as to breakage of water hydrant in vicinity of plaintiff's house without in any way connecting it with said alleged subsidence.

5. SAME.
It was also error to admit testimony as to subsidence in neighborhoods far removed from plaintiff's house without showing that conditions there may have been responsible for subsidence of plaintiff's property.

6. DAMAGES—PERMANENT DAMAGES—REPARABLE DAMAGES—MEASURE OF DAMAGES.
If injury to property caused by negligence is permanent or irreparable, measure of damages is difference in its market value before and after said injury, but if injury is reparable, and expense of making repairs is less than value of property, measure of damages is cost of making repairs.

Appeal from Gogebic; Driscoll (George O.), J. Submitted January 17, 1933. (Docket No. 7, Calendar No. 36,512.) Decided April 4, 1933.

Case by Thomas O'Donnell against Oliver Iron Mining Company, a corporation, for damages to plaintiff's dwelling alleged to be due to wrongful mining operations of defendant. Verdict and judgment for plaintiff. Defendant appeals. Reversed, and new trial granted.

*Jones & Patek* (*Norris, McPherson, Harrington & Waer,* of counsel), for plaintiff.

*Charles M. Humphrey* and *Charles M. Humphrey, Jr.* (*Elmer F. Blu,* of counsel), for defendant.

BUTZEL, J. In the years 1910 and 1911, Thomas O'Donnell, plaintiff, erected a two-story dwelling house on property he owned on the north side of Ayer street, at a point 200 feet west of Lake street,

in the city of Ironwood, Michigan. The dimensions of the house were 27 by 52 feet. It was of frame construction, with brick veneer up to the second floor, and a cellar underneath the house.

Ironwood is located in Gogebic county adjoining Iron county, Wisconsin, both of which contain very large deposits of iron ore. A large part of the city of Ironwood is built directly over mines owned and operated by defendant, Oliver Iron Mining Company. Plaintiff claims that, owing to defendant's failure to furnish sufficient lateral and subjacent support for the surface upon which his house stood, a serious subsidence resulted, and, as a consequence thereof, cracks appeared in the foundation, walls, and cellar of the house to such an extent that the property has been very badly damaged. Defendant contends that the cracks are in no way due to subsidence, but rather to the fact that the house was built upon what was formerly marshy ground, and that this fact, together with the poor quality of the materials used in the foundation, made it impossible for the building to withstand the very damaging climatic conditions of several preceding winters. It further claims that the mining operations did not affect any of the property in the immediate proximity of plaintiff's home and could not possibly have caused the damage claimed. The jury rendered a verdict of $8,500 in favor of plaintiff, and defendant appeals. We shall discuss only a few of the more serious errors alleged.

Plaintiff's attorneys first introduced the deposition of Donald E. Sutherland, defendant's assistant general superintendent, called as an adverse witness. They also cross-examined under the statute (3 Comp. Laws 1929, § 14220) Oscar E. Olson, defendant's chief engineer for the Ironwood district, principally

about conditions in and about Ironwood. The testimony of both witnesses is voluminous and covers 88 pages of the printed record. They described the general contour of the land in and about Ironwood, testifying that in certain portions thereof there had been subsidence to a greater or lesser extent. Sutherland, however, stated positively that it was impossible for defendant's mining operations to have caused any damage to plaintiff's property.

Plaintiff next took the stand and then called Joseph H. Rowell and James H. Goudie to give expert testimony. Considerable difficulty was encountered by plaintiff's attorneys in submitting a proper hypothetical question to witness Rowell. After being admonished by the court to frame a proper question, witness was permitted to answer the following question propounded by them:

"*Q.* As a mining engineer, have you sufficient information before you, from what you have seen, from your examination, and from the testimony that you have heard of Mr. O'Donnell, Mr. Olson and Mr. Sutherland, to be able to form an opinion as to the cause of the cracks in the O'Donnell basement and floor?"

Rowell also stated that his opinion was based partially on the testimony of Mr. Sutherland and Mr. Olson. Witness Goudie was also asked to give his opinion, based on his own observations and experience and on the testimony of Sutherland and Olson. Vigorous objections to this form of question were made by defendant's counsel, but the trial court overruled defendant's objections.

A proper hypothetical question should have been propounded to Rowell and Goudie, and it could not be dispensed with by referring in a general manner to the very lengthy testimony of other witnesses,

one of whom stated positively that the cracks were not due to defendant's mining operations. Inasmuch as there had been an earlier trial of the same cause, the plaintiff's attorneys had full notice and ample opportunity to formulate a proper question. The effect of the questions was to make the witness, and not the jury, pass upon the credibility and correctness of the previous testimony. There was much testimony from which conflicting inferences as to the facts might be drawn, even were it conceded that the testimony on its face was not contradictory. The fact that Olson and Sutherland both gave opinions in the course of their testimony made the expert testimony based upon their statements even more objectionable. We cannot tell what facts were made the basis of the experts' opinions, nor whether, in their formulation, there was an improper reliance placed on the opinions given by Olson and Sutherland. *People* v. *Aikin,* 66 Mich. 460 (11 Am. St. Rep. 512); *People* v. *Bowen,* 165 Mich. 231; *Dunagan* v. *Appalachian Power Co.* (C. C. A.), 33 Fed. (2d) 876 (68 A. L. R. 1393); *People* v. *McElvaine,* 121 N. Y. 250 (24 N. E. 465, 18 Am. St. Rep. 820); *People* v. *Le Doux,* 155 Cal. 535, 553 (102 Pac. 517).

It was error, under the circumstances, to interrogate the expert witnesses without proper hypothetical questions, in which all of the facts from which the experts were to draw their conclusions were stated. Our attention is called to some authority that permits the practice of permitting an expert to base his conclusions on the testimony of previous witnesses, but even this authority does not go so far as to permit such questions where the previous testimony has been long and involved and is somewhat contradictory. *Kempsey* v. *McGinnis,* 21 Mich. 123, 137.

Defendant objected to the admission of testimony to the effect that a water hydrant had broken in the vicinity of plaintiff's home. The cause of the break was not shown. Water hydrants have been known to break in cities far removed from mining operations. Such breaks have frequently been the result of electrolysis, frost, faulty construction, or causes other than subsidence. The judge permitted the testimony upon plaintiff's promise to connect it with other evidence showing a relationship to the subsidence. He neglected to do this, and defendant thereupon asked that the testimony in regard to the water hydrant be stricken. The trial judge's denial of this request was error. As the record stands, at most there was an unfounded inference that the break in the water hydrant was caused by subsidence. Plaintiff sought to strengthen his case by building one inference upon another inference which had no basis in the testimony. This was error. The testimony should have been either excluded, or, if admitted, stricken upon plaintiff's failure to connect it up with the other testimony in the case. *United States* v. *Ross,* 92 U. S. 281; *Swenson* v. *Erlandson,* 86 Minn. 263 (90 N. W. 534).

Testimony was also admitted, over objections of defendant, to show subsidence of soil in neighborhoods far removed from plaintiff's residence, at points where the excavations were far more extensive and located and conducted under conditions substantially lacking in similarity to those claimed responsible for the damage in the instant case. A large amount of this testimony related to operations over half a mile east of plaintiff's property, and there was no showing whatsoever that such operations could have caused any damage to plaintiff's property. When objection was made, plain-

tiff's counsel here again stated that the testimony would be connected up in the proper manner. The court permitted all of this testimony to stand, despite the fact that the alleged relevancy of the testimony was not shown, and charged the jury that it might consider conditions at and around the mines in determining whether plaintiff's property was damaged by defendant's mining operations. It was error to permit any testimony as to what took place in other parts of Ironwood or its vicinity without some showing that such conditions may have been responsible for the subsidence of plaintiff's property. The conditions under which the operations were being conducted to the east of the O'Donnell property were so dissimilar that evidence as to these operations and their effect could have no relevancy in this cause, and would only tend to mislead and confuse the jury. The rule is stated in 2 Jones, Commentaries on Evidence (2d Ed.), § 608, pp. 1124, 1125:

"In determining whether certain effects have been produced by the causes alleged it has frequently been held that the testimony need not be confined to the effect in the case upon trial, but that proof of the effect upon other property similarly situated may be received. * * * But it will be found that the cases admitting testimony of this character have all recognized the rule that substantial similarity of conditions must first be shown."

See *Emerson* v. *Lowell Gas Light Co.*, 3 Allen (85 Mass.), 410, 417; *Haynes* v. *Burlington*, 38 Vt. 350, 363; *Louisville Water Co.* v. *Weis*, 76 S. W. (Ky.) 356; *Hughes* v. *General Electric Light & Power Co.*, 107 Ky. 485 (54 S. W. 723).

As the case must go back for a new trial, on account of the errors pointed out, we also call atten-

tion to another alleged error. The court instructed the jury that, if it found that the injury to plaintiff's property was caused by defendant's negligence, the damages should represent the difference between the market value of the house at the date of the injury and that value it would have had if the property had remained undamaged. This is the measure of recovery only where the injury is permanent. No instruction was given as to what the measure of damages should be in case the jury found the injuries were reparable, nor did defendant make any showing as to the cost of full restoration and repair of the house. Apparently, plaintiff tried the case on the theory that the damage was permanent and irreparable. Nevertheless, if defendant shows that the property can be repaired and restored to the condition it would have been in had it not been damaged by the subsidence, and also gives proper testimony as to the cost of the repairs, the court should make it clear to the jury that the question as to the permanency of the damage, and, if reparable, the cost of repairs, is one of fact for them to decide, if they conclude that defendant was responsible for the damages. The correct rule is stated in *Berkey* v. *Berwind-White Coal Mining Co.,* 229 Pa. 417 (78 Atl. 1004), where the court said:

"The twelfth assignment relates to the measure of damages. The learned judge correctly disposed of the matter covered by this assignment. He distinctly told the jury that if the injury was reparable or curable with reasonable effort and expense less than the value of the property, the measure of damages was what it would cost to make the repairs. He further instructed them that there had been no proof offered by the plaintiff of what it would cost to make the repairs and 'if it is reparable, there being no proof of the cost of repair, you cannot allow

for it.' He also told the jury in answer to a point, and very properly so, that if the injury was permanent the measure of damages was the difference in the market value of the farm before and after the injury inflicted by the mining operations. The assignment is dismissed.''

See, also, *Ohio Collieries Co.* v. *Cocke,* 107 Ohio St. 238 (140 N. E. 356).

The judgment is reversed, with costs to defendant, and the case is remanded to the lower court for a new trial.

McDONALD, C. J., and CLARK, POTTER, SHARPE, NORTH, FEAD, and WIEST, JJ., concurred.