KRATZE v INDEPENDENT ORDER OF ODDFELLOWS

Docket No. 91958. Argued December 9, 1992 (Calendar No. 7). Decided April 28, 1993. Rehearing denied *post*, 1273.

David R. Kratze brought an action in the Wayne Circuit Court against the Independent Order of Oddfellows, Garden City Lodge No. 11, seeking damages resulting from a 1.2-foot encroachment of its building on the plaintiff's property. Following a bench trial, the court, Louis F. Simmons, Jr., J., ordered the encroachment removed and awarded damages of $797,215.46. The Court of Appeals, Hood, P.J., and Jansen and G. S. Allen, JJ., in an opinion per curiam, affirmed the injunction and reversed all but $10,200 of the award, concluding that the correct measure of damages was the actual damage incurred, and remanded the case for a new trial with respect to damages (Docket No. 126453). The defendant appeals.

In a unanimous opinion by Justice Boyle, the Supreme Court *held*:

The order to remove the encroachment must be vacated. Because the encroachment is permanent, the correct measure of damages is either the diminution in value of the property, i.e., the value of the property without the encroachment minus its value with the encroachment, or the value of the 1.2-foot strip of land itself.

1. Where a structure encroaches onto the land of another, the approach in fashioning a remedy is to balance several factors, including the relative hardship to the parties and the equities between them. Unless the burden to the defendant of removing the encroachment is disproportionate to the hardship to the plaintiff in allowing the encroachment to remain, an injunction will issue. While balancing is not necessary if the encroachment results from an intentional or wilful act, because in this case there is no evidentiary support that the encroachment was wilful or intentional, the trial court erred in issuing a mandatory injunction without balancing the relative hardships to the parties.

2. The injury to the plaintiff as a result of the encroachment

REFERENCES
Am Jur 2d, Adjoining Landowners § 121.
See ALR Index under Damages; Encroachment.

is slight, and movement of the building or wall could cause the building to collapse. Examining the character, conduct, and motives of the parties, it is apparent that the plaintiff knew before purchasing the property that a portion of the building stood on the property, and that the defendant was unaware of the encroachment until it was brought to its attention, and, being made aware, inquired about purchasing the strip. On balance, the hardship to the defendant in removing the encroachment outweighs the hardship to the plaintiff in allowing the structure to remain.

3. The Court of Appeals erred in stating the measure of damages as the diminution in value or cost of repairs to the property. Because the trespass is permanent, the correct measure of damages is the diminution in value of the property itself as represented by the value of the property without the encroachment, minus the value of the property with the encroachment, or, alternatively, the value of the strip of land on which the building sits.

4. The plaintiff may not recover special damages for the time spent by employees in attempts to remedy the encroachment. Nor may he recover for the costs of the second survey because this was not caused by the defendant; rather, it occurred before he exercised his option to purchase and was necessary to the decision to purchase.

Affirmed in part, reversed in part, and remanded.

190 Mich App 38; 475 NW2d 405 (1991) affirmed in part and reversed in part.

TRESPASS — ENCROACHMENT — DAMAGES.

Where an encroachment is permanent, the correct measure of damages is either the diminution in value of the property, i.e., the value of the property without the encroachment minus its value with the encroachment, or the value of the land itself.

*Weisman, Trogan, Young & Schloss, P.C.* (by *Martin C. Weisman* and *Adam J. Baker*), for the plaintiff.

*Gerald M. Soborowski; Dykema, Gossett,* of counsel (by *Kathleen McCree Lewis, Barbara L. Goldman,* and *Andrew J. Dillon*), for the defendants.

Boyle, J.

I

We apply a balancing test to conclude that the Court of Appeals erred in affirming the trial court's order to defendant[1] Oddfellows Lodge No. 11 to remove an encroachment on plaintiff's property. Because we also disagree with the formula for the measure of damages ordered on retrial, we reverse in part and affirm in part the decision of the Court of Appeals and remand the case for further proceedings consistent with this opinion.

The factual backdrop of the case is aptly summarized by the Court of Appeals:

Lodge No. 11 purchased Lots 2911 and 2912 of Folker's Garden City Acres No. 18 in December 1948. Already existing on the lots at the time of their purchase was a building foundation upon which the previous owners had intended to erect a church. Lodge No. 11 instead erected its meeting hall on this foundation.

In September 1985, plaintiff entered into an option agreement to purchase Lots 2901 to 2910 of Folker's Garden City Acres No. 18. This property is adjacent to and abuts the property owned by Lodge No. 11. Plaintiff gave a deposit of $1,000 and agreed to purchase the property for $18,000. He intended to erect multiple-unit dwellings on the property.

Plaintiff caused two surveys of the property to be done. As a result of the first survey, plaintiff received in early 1986 a "schematic" of his property that showed the northeast corner of the building owned by Lodge No. 11 touching plaintiff's property line. A site plan for a sixty-two-unit apartment building was prepared using this schematic and submitted to Garden City for approval

---

[1] The Grand Lodge of Michigan was initially held jointly and severally liable for the damages award. However, the Court of Appeals reversed the ruling; thus, the only appellant in this appeal is the Independent Order of Oddfellows, Garden City Lodge No. 11.

on March 27, 1986. A short time later, plaintiff learned, as a result of the second survey, that the northeast corner of the building owned by Lodge No. 11 encroached 1.2 feet onto his property.[1] Nevertheless, in May 1986 plaintiff purchased the property for $18,000 as agreed.

The Garden City Planning Commission approved plaintiff's site plan on August 28, 1986, as submitted, without knowledge of the encroachment.[2] However, as a result of the encroachment, plaintiff was unable to secure title insurance and, without title insurance, to secure financing for his project.

In July, 1987 plaintiff filed the instant action in the Wayne Circuit Court, seeking damages resulting from the encroachment. Following a one-day bench trial, the court ordered the encroachment removed and found Lodge No. 11 and the Grand Lodge jointly and severally liable for damages totalling $797,215.46, exclusive of costs and interest.

---

[1] This second survey was done because plaintiff had "determined that there could possibly be an encroachment."

[2] The planning commission erroneously approved the number of residential units to be housed in plaintiff's proposed building. The site plan contemplated a structure with sixty-two units. However, density requirements limited the number of units to fifty-six.

---

[190 Mich App 38, 40-41; 475 NW2d 405 (1991).]

The Court of Appeals affirmed the injunction, and reversed all but $10,200 of the $797,215.46 damages award.

The Court of Appeals rejected the defendant's claim that the appropriate measure of damages was the value of the property without the trespass minus the value of the property with the trespass. Finding that formula applicable where a trespass results in permanent or irreparable damage to the property, the Court rejected defendant's damages formulation on the ground that defendant's trespass was continuing and the harm caused was

reparable. Thus, the Court concluded that the correct measure of damages was the actual damage incurred that

> include[s] the difference between the value of the land before the harm and the value after the harm, or where appropriate, the cost of restoration that has been or may be reasonably incurred, and the value of the lost use of the land and discomfort and annoyance to the landowner . . . and reflect adherence to the long-established rule that "where a party commits a trespass he must be held to contemplate all the damages which may legitimately follow from his illegal act." *Allison v Chandler,* 11 Mich 542, 561 (1863). [*Id.* at 46. Citations omitted.]

Finding that the trial court correctly employed the actual-damage-incurred measure of relief, the Court reversed several items of the award and reduced some items of damages as excessive. The Court found no causal nexus between the encroachment and the purchase price of the property or the property taxes and found a similar lack of causal connection between the encroachment and the costs of the project survey, the engineering report, an additional site plan, additional engineering, additional construction plans, and the lost rental income on the six units above what density requirements allowed. Finally, the Court of Appeals vacated the damages awarded for lost rental income and lost appreciation. It held that, while net rental loss and lost profits may be awarded as damages for trespass, "[s]uch damages are awarded as a result of injury sustained by property existing at the time of the trespass." *Id.* at 48. The Court rejected defendant's claim that plaintiff

was obligated to mitigate damages[2] and the argument that the equitable doctrine of unclean hands barred removal of the encroachment. The Court of Appeals remanded the case for a new trial with respect to damages and specifically affirmed the trial court's award of the cost of the second survey and costs incurred in connection with plaintiff's employees' attempts to resolve the encroachment. *Id.*

Both parties appealed the decision to this Court. Leave to appeal was initially denied.[3] A motion for reconsideration filed by the Oddfellows was granted, and this Court granted leave to appeal.[4] We specifically directed the "parties . . . to include among the issues to be briefed whether it would be materially unjust not to permit the defense, in any remand proceedings, to pursue the theories of adverse possession and acquiescence, as well as the other arguments against removing the encroachment that have been presented to this Court."[5]

## II

On appeal in this Court, defendant argues that

[2] Defendant argues that the Court of Appeals erred in holding that plaintiff had no obligation to avoid damages that he could have reasonably avoided. While we do not reach this argument, we note our agreement with defendant's assertion. The doctrine of damage avoidance has long been recognized in Michigan. See *Gilbert v Kennedy,* 22 Mich 117 (1871); *Talley v Courter,* 93 Mich 473; 53 NW 621 (1892); *McCullagh v Goodyear Tire & Rubber Co,* 342 Mich 244; 69 NW2d 731 (1955). It is only where the damage is the result of the "defendant's intentional or positive and continuous tort" that the doctrine of avoidable consequences will not apply. *Allen v Morris Building Co,* 360 Mich 214; 103 NW2d 491 (1960). See also 4 Restatement Torts, 2d, § 918(2), p 500.

[3] 439 Mich 970 (1992).

[4] 440 Mich 888 (1992). However, a motion for reconsideration filed by Kratze as cross-appellant was denied. *Id.*

[5] We decline the defendant's invitation to excuse its default in raising the defenses of acquiescence and adverse possession. Our review of the record does not persuade us that any manifest injustice would occur in precluding these defenses on retrial of the damages issue.

the trial court and the Court of Appeals committed legal error because neither tribunal considered the relative hardships to the parties that would result from an order to remove the encroachment. Plaintiff's reply points out that this exact question was not raised in the trial court or the Court of Appeals; therefore, it is not properly before this Court. However, the rule is not immutable, particularly where the claim is equitable in nature. "The difference is that the practice is extremely rare at law; whereas in equity it is necessary on due occasion lest the Court enter an unconscionable decree." *Prudential Ins Co v Cusick,* 369 Mich 269, 291; 120 NW2d 1 (1963), citing *Dation v Ford Motor Co,* 314 Mich 152, 160; 22 NW2d 252 (1946). Thus, we agree with the Court of Appeals that despite defendant's procedural default, declining review could lead to the entry of an unconscionable result. 190 Mich App 45.

Fashioning an appropriate remedy where a structure encroaches on the land of another poses special problems and has resulted in special solutions. Dobbs, Remedies, § 5.6, p 355. "In such cases the approach is to balance several factors—the relative hardship to the parties and the equities between them—and to grant or deny the injunction as the balance may seem to indicate." *Id.*[6]

---

[6] The relative hardships to the parties is but one of the many factors a court may consider when determining the propriety of issuing an injunction against a tort. See, e.g., 4 Restatement Torts, 2d, § 936, pp 565-566, which provides:

(1) The appropriateness of the remedy of injunction against a tort depends upon a comparative appraisal of all of the factors in the case, including the following primary factors:
(a) the nature of the interest to be protected,
(b) the relative adequacy to the plaintiff of injunction and of other remedies,
(c) any unreasonable delay by the plaintiff in bringing suit,
(d) any related misconduct on the part of the plaintiff,

This Court has long recognized that "it will examine into all the circumstances of the case, and, if it is apparent that the relief sought is disproportioned to the nature and extent of the injury sustained, or likely to be, the court will not interfere but will leave the parties to seek some other remedy." *Hall v Rood,* 40 Mich 46, 49 (1879).[7]

The process is perhaps best described as "balancing all of the equities of the situation." 4 Restatement Torts, 2d, § 941, comment a, p 581.[8] In balancing the hardships and equities regarding encroachment, courts are guided by two central considerations: An interest in avoiding judicial approval of private eminent domain by the encroacher, and an interest in preventing extortion by the encroachee, who may use the injunction to "compromise" the claim.[9] Dobbs, *supra.*

(e) the relative hardship likely to result to defendant if an injunction is granted and to plaintiff if it is denied,

(f) the interests of third persons and of the public, and

(g) the practicability of framing and enforcing the order or judgment.

[7] In other words:

In cases where a mandatory injunction is sought the rule . . . is that the court will balance the benefit of an injunction to plaintiff against the inconvenience and damage to defendant, and grant an injunction or award damages as seems most consistent with justice and equity under all the circumstances of the case. [*Hasselbring v Koepke,* 263 Mich 466, 480; 248 NW 869 (1933).]

[8] Section 941 of the Restatement provides:

The relative hardship likely to result to the defendant if an injunction is granted and to the plaintiff if it is denied, is one of the factors to be considered in determining the appropriateness of injunction against tort. [*Id.* at 580.]

[9] [N]o one should be permitted to take land of another merely because he is willing to pay for it. This would amount to a private eminent domain. No one should be permitted to accom-

Thus, unless the burden to the defendant of removing the encroachment is disproportionate to the hardship to the plaintiff in allowing the encroachment to remain, an injunction will issue. *Id.* at 356; *Hall, supra* at 49. However, the question is not resolved merely by determining what advantage the plaintiff will gain if an injunction issues; a just resolution of the question requires examining the hardship the plaintiff will suffer in the absence of an injunction. In other words, the inquiry is not merely

> a nice measurment [sic] of relative advantages and a denial of the injunction if the scales tip in the defendant's favor. The law does not grant an injunction merely because of the advantage that the plaintiff might reap from it, and it does not refuse an injunction merely because of the convenience that the refusal might afford the defendant. [4 Restatement Torts, 2d, § 941, comment a, pp 580-581.]

As the drafters of the Restatement recognized, the inquiry goes further. The court should also examine the "character of the conduct (including the respective motives) of the defendant and the plaintiff . . . ." *Id.* at 581.

Thus, the drafters of the Restatement expressly noted that a plaintiff may be partially responsible for the hardship a defendant would suffer from the

---

plish this indirectly, by intentionally trespassing with the hope that an injunction would be denied and he would be permitted to remain on the land. The second consideration moves in the opposite direction. Though private eminent domain cannot be sanctioned, neither can extortion, and if an injunction is issued to protect an insignificant strip of the plaintiff's land at the expense to the defendant of tearing down a large building, one may expect the plaintiff, having procured the injunction, to "compromise" for an extortionate figure. [Dobbs, *supra,* § 5.6, p 355.]

This is conduct that equity should not sanction.

grant of an injunction and that a factor that would weigh against a plaintiff is the plaintiff's "knowledge of the existence of . . . adverse affects [sic]" of the plaintiff's decision to move to an adversely affected area. *Id.,* comment b, p 581.

While a court is not bound to engage in a balancing of the relative hardships and equities if the encroachment resulted from an intentional or wilful act, Dobbs, *supra* at 355, 357, we agree with the defendant's assertion that there is no evidentiary support that the encroachment was wilful or intentional,[10] and that the trial court erred in issuing a mandatory injunction without balancing the relative hardships to the parties.

III

The injury to the plaintiff as a result of the encroachment is slight. The building encroaches only 1.2 feet and was not noted in the initial survey. Furthermore, enough property remains to satisfy the city set-back requirements, even without the encroached-upon strip of land.

Although the plaintiff argues that the encroachment prevents the construction of an apartment building on the property, trial testimony showed that there would be no impediments to site plan approval, title insurance, or construction financing, if the encroached-upon property were ex-

---

[10] "Where an encroachment by an adjoining land-owner is intentional or wilful, a mandatory injunction will ordinarily be granted to compel its removal, without regard for the relative conveniences or hardships which may result from ordering its removal." [*Sokel v Nickoli,* 347 Mich 146, 151; 79 NW2d 485 (1956), quoting anno, *Mandatory injunction to compel removal of encroachments by adjoining landowner,* 28 ALR2d 679, 705.]

See also *Ives v Edison,* 124 Mich 402, 411; 83 NW 120 (1900) (where the defendant "preferred to act without waiting for the court to determine the controversy," the defendant acted at his peril and the circuit judge should have granted an injunction).

cluded from the plaintiff's holdings. On the other hand, testimony at trial, to which no objection was raised, indicates that, because of the age of the structure, neither the building, nor the wall, could be moved without causing the building to collapse.

Examining the character, conduct, and motives of the parties, 4 Restatement Torts, 2d, § 941, comment a, it is apparent that the plaintiff knew before purchasing the property that a portion of the Oddfellows' building stood on the property he intended to purchase. As an attorney with thirty years' experience in the building and construction industry, he also knew that he would not be able to obtain clear title to the 1.2-foot encroachment. Without clear title, neither title insurance nor construction financing was available, and without construction financing, construction could not begin. Despite knowing the problems associated with such a purchase, the plaintiff purchased the property.

Furthermore, the original site plan submitted to the Garden City Planning Commission called for sixty-two units to be built on the property and was submitted to the commission on the basis of the initial property survey, which showed only that the defendant's building was abutting the plaintiff's property line. Within days of this submission, plaintiff's second survey discovered the encroachment. At that point, according to trial testimony, plaintiff should have submitted a revised site plan that showed the encroachment. He did not, and, almost six months later, the commission approved the sixty-two unit development even though density requirements in effect at the time would have allowed only fifty-six units to be built on the property.

Plaintiff argues that the original site plan would have been grandfathered to permit construction of sixty-two rather than fifty-six units if only he had begun to build under the initial site plan approval, which could have occurred had he obtained financing more quickly. He offers no authority for the proposition that the planning commission would have so approved the sixty-two unit plan. Nor does plaintiff's argument acknowledge his own obligation to inform the planning commission of the encroachment. While the trial testimony of the Garden City Community Development Director indicated that the planning commission most likely would have been obligated to issue the permit for the sixty-two units approved as a result of its error, the director also testified that had plaintiff submitted a revised site plan that revealed the encroachment, the planning commission would have "more likely" discovered its error regarding the density requirements, and would not have approved the sixty-two units.

Against the plaintiff's conduct, we weigh the defendant's conduct. It is not contested that the foundation for the Oddfellows' meeting hall stood where it now stands when the Oddfellows purchased the property in 1948. The meeting hall was built on the existing foundation. The defendant was unaware of the encroachment until the plaintiff brought it to its attention, and, being made aware, inquired about purchasing the strip from the plaintiff. Plaintiff contends that defendant's conduct was "stonewall[ing]." It appears that plaintiff promised to deliver a copy of the second survey to defendant, but did not. Although it is unclear which party bears responsibility for the breakdown of negotiations, defendant contends with record support that plaintiff's only solution

to the problem was for the Oddfellows to move the structure.[11]

On balance, the hardship to the defendant as a result of removing the encroachment outweighs the hardship to the plaintiff as a result of allowing the encroaching structure to remain. Under the totality of the circumstances, the balance of hardships weighs heavily in the defendant's favor. Thus, the order to remove the encroachment was not consistent with justice and equity and should be vacated.

IV

While the Court of Appeals correctly recognized that the measure of damages turns on characterization of the injury as reparable or irreparable, it incorrectly characterized the instant injury as reparable. The measure of damages was incorrect not only in mischaracterization of the nature of the injury, but also in the formulation of the measure of damages.

One injured by the trespass of another is entitled to compensation for the injury on two levels. First, a plaintiff will be entitled to general damages for the injury. Dobbs, *supra,* § 3.2, p 138. "[G]eneral damages are such as the law implies or presumes to have accrued from the wrong complained of." *Bateman v Blake,* 81 Mich 227, 231; 45 NW 831 (1890). Second, a plaintiff may also be entitled to consequential or special damages if specifically pleaded and proved.[12] *Id.* "Special dam-

[11] At trial, plaintiff testified that he would prefer to have the building torn down because, in his opinion, the building was an eyesore and presented a safety hazard.

[12] The defendant does not argue that the plaintiff failed to plead items of special damage, although we note that the plaintiff's complaint included only a prayer for general damages.

ages are such as really took place, but are not implied by law." *Id.*

Where the wrong consists of a trespass to property resulting in an injury to the land, the general measure of damages is the diminution in value of the property if the injury is permanent or irreparable. *O'Donnell v Oliver Iron Mining Co,* 262 Mich 470, 477; 247 NW 720 (1933).[13] If the injury is reparable, or temporary, the proper measure of damages is the cost of restoration of the property to its original condition, if less than the value of the property before the injury. *Id.* The rule is, however, flexible in its application. *Schankin v Buskirk,* 354 Mich 490, 494; 93 NW2d 293 (1958). The ultimate goal is compensation for the harm or damage done. Thus, whatever method is most appropriate to compensate a plaintiff for the loss may be used. *Id.*

To determine whether the source of the injury is permanent or temporary, we again turn to Professor Dobbs. Several factors are used to determine whether the trespass is permanent or temporary. Where the trespass "is physically permanent or likely to continue indefinitely," it is apt to be deemed permanent. Dobbs, *supra,* § 5.4, p 338. "Likely to continue indefinitely," however, does not mean that the structure will last forever. "It is enough that on a consideration of all the relevant factors it seems likely to continue without any clear stopping point . . . ." *Id.* at 339. Physical permanence alone does not justify classification of a trespass as permanent. The trespass must also be "legally permanent, in the sense that courts

[13] This measure of damages is "assessed upon the theory that the defendant at that time took and appropriated an interest in the property of the plaintiffs for which it must pay." *Clinard v Town of Kernersville,* 215 NC 745, 752; 3 SE2d 267 (1939), quoted in Dobbs, *Trespass to land in North Carolina part II: Remedies for trespass,* 47 NC L R 334, 345 (1969).

will not require its removal." *Id.* at 340. Finally, which party seeks permanent damages is also a factor. *Id.* at 341.[14]

In the instant case, the structure is physically permanent because it is "likely to continue without any clear stopping point." It is legally permanent because, as we today hold, the order to remove it should not have been issued. We recognize, however, that it is the defendant trespasser who seeks to pay permanent damages and thus acquire a right of private eminent domain. We do not sanction private takings of private lands for private purposes. However, we also cannot ignore an award of damages in an amount that creates the possibility of a "compromise" equity should not sanction.[15]

Thus, we hold that the Court of Appeals erred in stating the measure of damages as the diminution in value or cost of repairs to the property. Because the trespass is permanent, the correct measure of damages is the diminution in value of the property itself as represented by the value of the property without the encroachment, minus the value of the property with the encroachment or, alternatively, the value of the strip of land on which the building sits.

---

[14] Professor Dobbs cites an example that is directly applicable in the instant case.

> If a defendant in good faith miscalculates his boundary line and accidentally builds a small portion of his house over the line on plaintiff's land, many courts will allow him to keep it there on payment of damages, since it would be an intolerable hardship to force him to tear down an entire house to avoid encroaching on a few square inches. [Dobbs, *supra,* § 5.4, p 340.]

[15] See n 9; see also Restatement, *supra,* § 941, comment c, pp 582-584. It is not difficult to imagine a scenario where the plaintiff would "settle" for the property itself in satisfaction of the judgment. The plaintiff would then own the final two lots, which abut the property he already owns on both sides of the Oddfellows' property.

In the instant case, the plaintiff had agreed to pay $18,000 for the property before learning of the encroachment. Even after the encroachment was discovered, he paid the asking price for the property. Thus, the encroachment did not devalue the property. On remand, the plaintiff is entitled to recover only the alternative value of the 1.2-foot strip of land on which the structure is located, rather than the value of the rest of the property that he still has the benefit of using.[16]

The Court of Appeals allowed two items of special damage to stand: the cost of the plaintiff's employees' time spent in attempting to remedy the situation, and the cost of a second survey done on the property after the initial survey disclosed that the Oddfellows' building came dangerously close to encroaching on the property that the plaintiff intended to purchase. We do not agree that the plaintiff is entitled to recover for the time his employees spent in attempting to remedy the encroachment. Had he avoided rushing through the project in the first instance, his employees' time would not have been spent in pursuit of a solution to the problem. Given the fact that we cannot conclude from the record that plaintiff attempted to negotiate removal of the encroachment, damages for his employees' activities are too speculative.[17]

---

[16] The Court of Appeals has already vacated a large portion of the damages award because those items of damage were not caused by the encroachment, or because they were too speculative. We agree with that action. Damages not caused by the encroachment, or damages based on a business not yet in existence should not have been awarded. Moreover, damages for the purchase price of the property is grossly excessive given that plaintiff keeps most of the property and that the encroachment did not affect the number of units that plaintiff was allowed to build.

[17] Furthermore, the damages awarded for employee time included eighty hours spent by plaintiff's apartment manager in having the property rezoned. This time would have been expended regardless of

The plaintiff is also not entitled to recover for the costs of the second survey because this expense was not caused by the defendant's tort. The survey occurred before the plaintiff exercised his option to purchase and was necessary to enable him to make the decision to purchase.

### CONCLUSION

In sum, we hold today that the Court of Appeals and the trial court erred when they failed to consider the relative hardships and equities in determining the propriety of ordering the encroachment removed. Our review of the record discloses that the hardships and equities under the facts of this case weighed heavily in favor of the defendant. Therefore, the order to remove the encroachment is reversed.

Furthermore, we hold that the Court of Appeals incorrectly stated the measure of damages to be used on retrial on these facts. The correct measure of damages is the value of the 1.2-foot strip of land itself.

We therefore affirm in part and reverse in part the decision of the Court of Appeals and remand the case to the trial court for further proceedings consistent with this opinion.

CAVANAGH, C.J., and LEVIN, BRICKLEY, RILEY, GRIFFIN, and MALLETT, JJ., concurred with BOYLE, J.

the encroachment. It cannot be said, therefore, that this item of employee expense was caused by the encroachment.