*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MARILYN MACK,

        Plaintiff-Appellee,

v

NATURAL WAY, INC. and CHRISTOPHER
POELLNITZ,

        Defendants-Appellants.

FOR PUBLICATION
February 20, 2025
10:05 AM

No. 367998
Oakland Circuit Court
LC No. 2021-189570-NZ

Before: YATES, P.J., and LETICA and N. P. HOOD, JJ.

YATES, P.J.

While defendant, Christopher Poellnitz, was working for defendant, Natural Way, Inc., he applied chemicals, insecticides, and herbicides on the property of plaintiff, Marilyn Mack. Those services might have been a boon to most homeowners, but plaintiff resented the application of the chemicals on her organic clover lawn, garden, and plants. When plaintiff came out of her house to investigate, she wound up in a heated argument with Poellnitz, who initially claimed he was at the correct address of a customer. In the fullness of time, however, defendants acknowledged that they had mistakenly applied the chemicals at the wrong address. Plaintiff filed this suit, presenting claims for trespass and negligence. After the trial court granted plaintiff summary disposition on liability, a jury awarded her $22,400 in economic damages and $66,150 in noneconomic damages. On appeal of right, we affirm the awards of summary disposition and economic damages, but we reverse the jury's award of noneconomic damages and remand the case for further proceedings.

## I. FACTUAL BACKGROUND

On May 27, 2020, Poellnitz went to plaintiff's residence and started treating the lawn with chemicals that Natural Way supplied. Poellnitz was supposed to treat plaintiff's neighbor's yard, but he mistakenly went to plaintiff's yard after relying upon GPS directions. Plaintiff noticed that Poellnitz was spraying chemicals, so she confronted him and ordered him to get off her property. Poellnitz initially refused, and he argued with plaintiff. After some discussion, he returned to his truck and realized he was at the wrong location. By that point, he had already sprayed chemicals on portions of plaintiff's yard. The mistaken application of various fertilizers and weed killer was

especially harmful to plaintiff's yard because plaintiff had spent years cultivating an organic clover yard and garden. The clover yard was destroyed by the herbicide, and because Poellnitz had failed to take precautions for wind speed, some of the herbicide contaminated plaintiff's organic garden.

Plaintiff contacted Poellnitz's supervisor, who came to her property and gave her the safety data sheets for the chemicals Poellnitz had applied. The supervisor did not have authority to begin rehabilitation to remove the contaminated soil, so he reported back to Natural Way. Plaintiff did not hear again from Natural Way. Therefore, she notified the Michigan Department of Agricultural and Rural Development, which conducted an investigation and ultimately concluded that Poellnitz did not properly apply the chemicals and he lacked plaintiff's consent to apply them. Plaintiff also contacted the Michigan Environmental Protection Agency, which informed her that the chemicals would remain in her soil for approximately four years.

Plaintiff filed this action against Natural Way and Poellnitz, asserting one count of trespass and one count of negligence. Plaintiff sought economic and noneconomic damages for both claims in her first amended complaint. On April 5, 2022, plaintiff moved for partial summary disposition of defendants' liability on both claims. On May 26, 2022, the trial court issued an order granting summary disposition to plaintiff under MCR 2.116(C)(10) with respect to liability and scheduling a trial on damages.

Prior to the trial, the parties submitted competing motions in limine. Defendants contended that plaintiff should be precluded from presenting testimony of her noneconomic damages because noneconomic damages are impermissible in cases that arise from damage to real property. Plaintiff asserted that she should be allowed to present evidence of noneconomic damages. She conceded that noneconomic damages for property destruction would not be allowed if she were just asserting a negligence claim, but she insisted that she could pursue noneconomic damages because she had also established defendants' liability on her trespass claim.

After hearing oral argument on April 19, 2023, the trial court authorized plaintiff to request noneconomic damages at trial. The trial court likened the case to a situation in which an insurance company paid an aggrieved party for an injury, but the insurance compensation "doesn't take away the aggravation." The trial court determined that plaintiff was "allowed to ask for a price tag on aggravation." In an order issued on April 28, 2023, the trial court stated that "[p]laintiff shall be entitled to present testimony relating to her non-economic damages, e.g., mental anguish, etc."

During the four-day jury trial, plaintiff said that she had experienced depression, sadness, anxiety, stress, and bouts of crying after the incident because of the damage to her yard and garden. Plaintiff also provided a quote she received of $72,000 to rehabilitate her organic yard. Defendants contested the soil's contamination and cited plaintiff's lack of specific evidence about the time she spent cultivating her yard and the compensation she believed that she deserved. The jury awarded plaintiff $22,400 in economic damages for defendants' "negligence, and/or trespass" and $66,150 in "non-economic damages caused by [d]efendants' trespass[.]"

Defendants sought judgment notwithstanding the verdict ("JNOV") or remittitur, arguing that plaintiff was precluded from recovering noneconomic damages. Defendants also maintained that no evidence supported the jury's award. The trial court denied defendants' motion for JNOV, noting it had already decided that noneconomic damages were allowed. The trial court also denied

defendants' motion for remittitur, observing that there was sufficient evidence of plaintiff's mental anguish, suffering, and annoyance. Defendants then appealed of right.

## II. LEGAL ANALYSIS

On appeal, defendants argue that the trial court erred when it granted plaintiff's motion for partial summary disposition under MCR 2.116(C)(10) on liability. Additionally, defendants assert that the trial court erred when it allowed the jury to award noneconomic damages to plaintiff. We will address each argument in turn.

### A. MOTION FOR PARTIAL SUMMARY DISPOSITION

Defendants fault the trial court for granting plaintiff partial summary disposition pursuant to MCR 2.116(C)(10) and thereby resolving liability on plaintiff's trespass and negligence claims. Defendants contend Poellnitz made a simple mistake when he entered plaintiff's property without permission and sprayed chemicals on her yard, so the reasonableness of that mistake should have been determined by a jury. Accordingly, defendants insist that awarding summary disposition to plaintiff on liability was unwarranted. "We review de novo a trial court's decision on a motion for summary disposition." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). Summary disposition under MCR 2.116(C)(10) should be granted if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." A motion under MCR 2.116(C)(10) "tests the *factual sufficiency* of a claim." *Id*. at 160. A trial court addressing such a motion "must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. A genuine issue of material fact exists "when the record leaves open an issue upon which reasonable minds might differ." *Id*.

A party requesting summary disposition under MCR 2.116(C)(10) "has the initial burden of supporting its position by affidavits, depositions, admissions, or other documentary evidence." *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). If the movant does so, then the burden shifts to the opposing party to establish that a genuine issue of material fact exists. *Id*. And "[i]f the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted." *Id*. at 363. The trial court must not assess credibility, weigh evidence, or resolve factual disputes, "and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10)." *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013). Having determined the governing standards, we must assess the propriety of the trial court's summary disposition ruling on each of plaintiff's two claims, i.e., trespass and negligence.

### 1. TRESPASS

A trespass involves the "unauthorized invasion on the private property of another." *Dalley v Dykema Gossett PLLC*, 287 Mich App 296, 315; 788 NW2d 679 (2010). "[T]he intrusion must have been intentional[,]" *Wolfenbarger v Wright*, 336 Mich App 1, 15; 969 NW2d 518 (2021), but

"the defendant's intent in causing a trespass . . . is generally irrelevant."[1] *Traver Lakes Community Maintenance Ass'n v Douglas Co*, 224 Mich App 335, 345; 568 NW2d 847 (1997). "The intent required . . . for liability as a trespasser is simply an intent to be at the place on the land where the trespass allegedly occurred." Prosser & Keeton, Torts (5th ed), § 13, p 73. "The distinction to be made is between accidental and intentional entries." *Id*. Consequently, "[i]f the actor intends to be upon the particular piece of land, it is not necessary that he intend to invade the other's interest in the exclusive possession of his land." 2 Restatement Torts, 2d, § 163, comment b, p 294. "The intention which is required to make the actor liable . . . is to enter upon the particular piece of land in question, irrespective of whether he knows or should know that he is not entitled to enter." *Id*. "It is, therefore, immaterial whether or not he honestly and reasonably believes that . . . he has the consent of the possessor . . . or that he has a mistaken belief that he has some other privilege to enter." *Id*. at pp 294-295.

Here, the facts supporting plaintiff's trespass claim are clear. It is undisputed that Poellnitz applied chemicals at the wrong house. In his deposition, Poellnitz admitted that he relied entirely on GPS and did not confirm the address before applying the chemicals. Defendants did not deny Poellnitz intruded on plaintiff's property, but argued that his intrusion was simply a mistake. The parties disagree about whether a trespass claim requires a showing of intent, and whether a mistake that is reasonable constitutes a defense to such a claim. In their response to plaintiff's motion for summary disposition, defendants argued that trespass requires a showing of an intent to trespass. Defendants then contended that there were genuine issues of material fact as to Poellnitz's intent and whether his entry onto plaintiff's land was the product of a reasonable mistake. The outcome of plaintiff's motion for summary disposition, therefore, turns on the elements of a trespass claim and whether the reasonableness of Poellnitz's mistake is a material fact.

Binding precedent establishes that the reason for Poellnitz's intrusion is irrelevant, so long as he intended to enter onto plaintiff's property. See *Traver Lakes*, 224 Mich App at 345. Trespass simply requires an intentional, unauthorized intrusion on a person's private property. *Dalley*, 287 Mich App at 315; *Wolfenbarger*, 336 Mich App at 15. Therefore, the reasonableness of Poellnitz's mistake is not material to plaintiff's trespass claim. In their brief discussion of this issue on appeal, defendants offer no authority to support the position that a reasonable mistake is a material fact in this case.[2] Although Poellnitz may have been mistaken about which property he needed to service, there is no dispute that Poellnitz intended to enter onto plaintiff's property. Consequently, the trial

---

[1] Whether a trespasser had a "good faith and honest belief that he possessed the legal authority to commit the complained-of act" may be relevant in other contexts, such as deciding whether treble damages are appropriate under MCL 600.2919. *Boylan v Fifty Eight LLC*, 289 Mich App 709, 725-726; 808 NW2d 277 (2010).

[2] Defendants' brief on appeal and their reply brief contain no citation to any authority to support the proposition that a reasonable mistake is a defense to a claim of trespass. The failure to support a claim with any authority permits this Court to deem the argument abandoned. *Mettler Walloon, LLC v Melrose Twp*, 281 Mich App 184, 220; 761 NW2d 293 (2008) (arguments not supported by authority are rejected as abandoned on appeal); *Isagholian v Transamerica Ins Corp*, 208 Mich App 9, 14; 527 NW2d 13 (1994) ("This Court will not search for authority to sustain or reject a party's position.").

court did not err in ruling that there was no genuine issue of material fact as to defendants' liability on plaintiff's trespass claim.

## 2. NEGLIGENCE

Defendants also claim the trial court erred when it awarded partial summary disposition to plaintiff as to liability on her negligence claim. Defendants contend that the trial court "improperly resolved the question of reasonableness on its own . . . ." "All negligence actions . . . require a plaintiff to prove four essential elements: duty, breach, causation, and harm." *Kandil-Elsayed v F & E Oil, Inc*, 512 Mich 95, 110; 1 NW3d 44 (2023). "In negligence cases, the duty is always the same, to conform to the legal standard of reasonable conduct in the light of the apparent risk." *Moning v Alfono*, 400 Mich 425, 443; 254 NW2d 759 (1977). The standard of care in a negligence action "is that of a person of reasonable prudence under like circumstances." *Babula v Robertson*, 212 Mich App 45, 52 n 2; 536 NW2d 834 (1995). Ordinarily, the question of "breach—whether defendants' conduct in the particular case is below the general standard of care—is a question of fact for the jury." *Kandil-Elsayed*, 512 Mich at 112 (quotation marks and citation omitted). If no genuine issue of material fact exists as to whether a duty was breached, however, a trial court may grant summary disposition under MCR 2.116(C)(10). *Id*. at 148 n 28.

Here, defendants do not specifically identify any particular element of negligence on which they believe a genuine issue of material fact exists. Instead, they contend that there was a question of fact as to the reasonableness of Poellnitz's actions. This appears to invoke the breach element of negligence. Defendants' argument that Poellnitz's mistake was reasonable and the jury should have decided liability on plaintiff's negligence claim is unpersuasive. Although the issue of breach is generally for the jury to decide, the trial court may grant summary disposition as to breach when there is no genuine issue of material fact. *Id*. at 112, 148 n 28. In arguing that the trial court erred by resolving the question of reasonableness, defendants do not cite any evidence that gives rise to a genuine issue of material fact as to the reasonableness of Poellnitz's conduct.

Moreover, the evidence supported the trial court's ruling. Poellnitz admitted that he solely relied on GPS when determining which property to treat. Poellnitz admitted that he did not visually confirm that he was at the correct address before applying the chemicals. He also testified that he was new to that route and was unfamiliar with it, yet he did not confirm he was at the correct home. Had Poellnitz confirmed plaintiff's address, which was posted on the front of her house, he would have prevented the incident from happening. Given the relatively simple act it would have taken for Poellnitz to confirm the address and avoid the improper application of chemicals, defendants' conduct was not reasonable, so defendants breached the duty of care owed to plaintiff. *Id*. Thus, the trial court did not err when it "resolved the question of reasonableness" by awarding summary disposition to plaintiff as to defendants' liability on her negligence claim.

## B. NONECONOMIC DAMAGES

Finally, defendants insist the trial court erred by allowing the jury to award noneconomic damages to plaintiff. The trial court's ruling that defendants are contesting is difficult to identify. Defendants repeatedly refer generally to the trial court "permitting" the jury to award noneconomic damages, but defendants do not clearly identify the order or decision that led to the jury awarding those damages. Defendants seem to claim that the trial court erred by denying defendants' motion

in limine, and granting plaintiff's competing motion in limine, addressing whether plaintiff would be allowed to offer evidence of her noneconomic damages to the jury. "We review a trial court's decision on a motion in limine for an abuse of discretion." *Bellevue Ventures, Inc v Morang-Kelly Investment, Inc*, 302 Mich App 59, 63; 836 NW2d 898 (2013). "An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes." *Elher v Misra*, 499 Mich 11, 21; 878 NW2d 790 (2016). "[A]dmission or exclusion of evidence because of an erroneous interpretation of law is necessarily an abuse of discretion." *Id*. Here, we conclude the trial court abused its discretion by ruling that plaintiff would be permitted "to present testimony relating to her non-economic damages, e.g., mental anguish, etc." That ruling enabled plaintiff to present evidence of mental anguish for property destruction, which is improper under our Supreme Court's decision in *Price v High Pointe Oil Co*, 493 Mich 238; 828 NW2d 660 (2013).[3]

In *Price*, 493 Mich at 264, our Supreme Court addressed "whether noneconomic damages are recoverable for the negligent destruction of real property" and reaffirmed a long-standing rule in common law that "the appropriate measure of damages in cases involving negligent destruction of property is simply the cost of replacement or repair of the negligently destroyed property." Our Supreme Court stated "the logical implication of this rule is that the measure of damages excludes noneconomic damages and the latter are not recoverable for the negligent destruction of property." *Id*. at 246-248.

In arriving at that conclusion, our Supreme Court offered several justifications for the rule excluding noneconomic damages in cases of negligent property damage. First, "the market sets the price of property," and people tend to overvalue their property. *Id*. at 261. Second, "economic damages, unlike noneconomic damages, are easily verifiable, quantifiable, and measurable." *Id*. at 261-262. Thus, "the cost of the property's replacement or repair has been the traditional standard for making a plaintiff 'whole' under the law . . . despite the fact that nearly every case involves some measure of emotional harm—if only from the stress of litigation—to victimized parties." *Id*. at 262. Third, prohibiting noneconomic damages limits disparities in damage awards from case to case because "no two plaintiffs would likely react to the damage or destruction of their properties in exactly the same fashion" and, as a result, "identical injuries to identical properties could lead to severe mental distress for one person, while causing only minor annoyance for another." *Id*. Fourth, excluding noneconomic damages "affords some reasonable level of

---

[3] Defendants also ask this Court to reverse the order concerning defendants' motion for judgment notwithstanding the verdict or remittitur. But the only place in the argument section of their brief on appeal that defendants address the ruling on remittitur is a passing reference in a footnote, where defendants conclude, without any additional analysis, that the jury award "was not supported by the evidence and was manifestly disproportionate in relation to the jury's valuation of the property at issue," so "the trial court should have, at the very least, reduced the damages . . . ." The claim concerning JNOV has even less analysis. That cursory discussion of the denial of that motion fails to properly present the issue for our review. See *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959) ("It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position.").

certainty to businesses regarding the potential scope of their liability for accidents caused to property resulting from their negligent conduct." *Id*. at 263. The *Price* Court relied heavily on *O'Donnell v Oliver Iron Mining Co*, 262 Mich 470; 247 NW 720 (1933), to support its conclusion that the appropriate measure of damages for negligent destruction of property is confined to economic damages. *Price*, 493 Mich at 244, 253, 255-256.

Our Supreme Court has also cited *O'Donnell* for the proposition that "[w]here the wrong consists of a trespass to property resulting in an injury to land, the general measure of damages is the diminution in value of the property if the injury is permanent or irreparable[,]" or "cost of restoration of the property to its original condition, if less than the value of the property before the injury" if the injury "is reparable or temporary." *Kratze v Indep Order of Oddfellows, Garden City Lodge No 11*, 442 Mich 136, 149; 500 NW2d 115 (1993). But our Supreme Court explained that that rule is "flexible in its application[,]" that "[t]he ultimate goal is compensation for the harm or damage done[,]" and that "whatever method is most appropriate to compensate a plaintiff for the loss may be used." *Id*.

In some situations, this Court has approved of noneconomic damages for property-related claims. For example, in unpublished opinions rendered in cases involving trespass-nuisance, this Court has allowed the recovery of noneconomic damages. *Stevens v Flint*, unpublished per curiam opinion of the Court of Appeals, issued December 20, 2007 (Docket No. 272329), p 3; *Bielat v South Macomb Disposal Auth*, unpublished per curiam opinion of the Court of Appeals, issued November 4, 2004 (Docket No. 249147), p 12. In *Stevens*, the defendant's sewer system failed, causing raw sewage to back up in the plaintiffs' houses. *Stevens*, unpub op at 1. And in *Bielat*, contaminated water from landfills the defendant operated entered the plaintiff's property. *Bielat*, unpub op at 1-2. This Court noted that trespass-nuisance is a tort, and that "[e]motional damages are recoverable in tort claims[.]" *Stevens*, unpub op at 3.

Here, plaintiff presented a trespass claim and a negligence claim. Both claims rested upon the same conduct of Poellnitz that resulted in damage to plaintiff's property. Notably, plaintiff did not assert a claim of nuisance or trespass-nuisance. Thus, the trespass claim addressed the invasion of plaintiff's interest in the exclusive possession of her land, rather than interference with her use and enjoyment of that land.[4] See *Traver Lakes*, 224 Mich App at 344. In both counts, plaintiff sought noneconomic damages for, among other things, the emotional distress and anxiety resulting from the damage to her property. The parties agree that noneconomic damages cannot be awarded for plaintiff's negligence claim. *Price*, 493 Mich at 264 ("the appropriate measure of damages in cases involving the negligent destruction of property is simply the cost of replacement or repair of the negligently destroyed property"). But we must determine if noneconomic damages are allowed for plaintiff's trespass claim.

---

[4] "Trespass is an invasion of the plaintiff's interest in the exclusive possession of his land, while nuisance is an interference with his use and enjoyment of it." *Traver Lakes*, 224 Mich App at 344-345 (quotation marks and citation omitted). This Court has also recognized a cause of action for "trespassory nuisance," *id*. at 345, or "trespass-nuisance[,]" *Price*, 493 Mich at 258 n 17, "where a plaintiff shows condition (nuisance or trespass), cause (physical intrusion), and causation or control by the defendant." *Traver Lakes*, 224 Mich App at 345.

In defendants' motion in limine, they asked the trial court to prohibit plaintiff from offering evidence of her noneconomic damages "in this matter." Defendants drew no distinction between the noneconomic damages requested for trespass and for negligence. Instead, defendants argued that noneconomic damages were "not available to claims involving real property." In plaintiff's motion in limine, she acknowledged that noneconomic damages are not appropriate for negligent destruction of real property, but she insisted that there was no such prohibition for property damage resulting from a trespass. Plaintiff's amended complaint makes clear that it was the destruction of her property—coupled with the potential impact on her husband's health—that caused her mental anguish.

The trial court's order permitted plaintiff to present evidence of her noneconomic damages, but provided no explanation for that decision. At oral argument on the motion in limine, the trial court stated that it would allow noneconomic damages and compared the situation to one in which an insurance company reimbursed someone for something that happened, but the reimbursement did not cover the aggravation the injured party felt. The trial court ruled that plaintiff was "allowed to ask for a price tag on aggravation." Given that explanation, it appears the trial court ruled that plaintiff was entitled to damages for the aggravation that she experienced as a result of the property damage.

Plaintiff acknowledges on appeal that she could not recover noneconomic damages for the destruction of her property on her negligence claim, but she asserts that she was entitled to recover noneconomic damages for that same property destruction if the noneconomic damages are treated as redress on her trespass claim. Plaintiff reasons that if the noneconomic damages fall exclusively under the trespass claim, she can escape our Supreme Court's holding in *Price* that noneconomic damages are not recoverable for the negligent destruction of real property. But such a distinction is incongruent with the reasons provided in *Price* for prohibiting noneconomic damages in the case of negligent destruction of property. *Price*, 493 Mich at 261-263.

The underlying facts of the instant case are strikingly similar to the facts in *Price*. In both cases, a service worker went to the plaintiff's property and performed an unwanted service, causing damage to the property. In *Price*, the plaintiff's house was destroyed and had to be rebuilt. *Id*. at 241. In the instant case, plaintiff's yard was badly damaged. In *Price*, the plaintiff's complaint included a claim for trespass, but the trespass claim was dismissed before trial. *Id*. With only the negligence claim remaining, our Supreme Court held that the plaintiff was not permitted to recover noneconomic damages for the negligent property damage. Here, we must decide whether, on facts quite similar to *Price*, plaintiff can recover noneconomic damages for harm to her property because she successfully asserted a trespass claim in addition to a negligence claim.

The reasons provided by our Supreme Court for prohibiting noneconomic damages in *Price* apply with equal force here. Noneconomic damages were not "easily verifiable, quantifiable, and measurable." *Id*. at 261. Noneconomic damages would engender disparity in awards of damages verdicts because other property owners would not suffer the acute aggravation and stress described by plaintiff in the instant case. *Id*. at 262. In addition, because of noneconomic damages awarded to plaintiff, Natural Way had no reasonable level of certainty about the scope of its liability for the accident resulting from its negligent conduct. See *id*. at 263. Finally, our Supreme Court held that *O'Donnell*, 262 Mich 470—the case that served as the basis of the *Price* opinion—also applied to a case involving injury to real property resulting from a trespass. *Kratze*, 442 Mich at 149, citing

*O'Donnell*, 262 Mich at 477. Thus, we conclude that the trial court erred in permitting plaintiff to recover noneconomic damages on her trespass claim.

In deciding that plaintiff is not entitled to noneconomic damages, we recognize the logical inconsistency in the law. It makes little sense to permit noneconomic damages in cases involving trespass-nuisance claims based on the mental anguish associated with deprivation of the use and enjoyment of property, but to bar noneconomic damages in cases where the property is negligently damaged or destroyed. But our Supreme Court has determined that noneconomic damages are not recoverable on negligence or trespass claims, which is enough to resolve this appeal by reversing the award of noneconomic damages to plaintiff.

Affirmed in part, reversed in part, and remanded for further proceedings including vacation of the noneconomic-damage award of $66,150. We do not retain jurisdiction.

/s/ Christopher P. Yates
/s/ Anica Letica
/s/ Noah P. Hood