*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BEN JOSEPH BURKHART TRUST,

             Plaintiff/Counterdefendant-Appellant,

and

KENT W. BURKHART, Trustee,

             Third-Party Defendant-Appellant,

UNPUBLISHED
May 19, 2022

v

HANDICRAFT LLC and DANIEL CRAMER,

             Defendants/Counterplaintiffs/Third-
             Party Plaintiffs-Appellees.

No. 357714
Washtenaw Circuit Court
LC No. 14-000392-CH

Before: MURRAY, P.J., and SAWYER and M. J. KELLY, JJ.

PER CURIAM.

This case returns to this Court following a remand for trial on a claim for trespass brought by plaintiff, The Ben Joseph Burkhart Trust (the Trust).[1] On remand, the trial court entered an order limiting the scope of the trespass claim. A bench trial was then held on the trespass claim. After the presentation of the Trust's case-in-chief, the trial court denied defendants, Daniel Cramer and Handicraft, LLC's, motion for directed verdict, and then, upon stipulation of the parties, adjourned the trial so that the parties could submit proposed equitable resolutions to their ongoing dispute. Defendants submitted a proposal; the Trust and third-party defendant Kent Burkhart did not. Thereafter, without holding a hearing or allowing the Trust and Kent an opportunity to object, the court entered an order dismissing the trespass claim and granting equitable relief consistent with the proposal submitted by defendants. The Trust and Kent now appeal by right. For the reasons stated in this opinion, we affirm the order limiting the scope of the trespass claim, but

---

[1] *Burkhart Trust v Cramer*, unpublished per curiam opinion of the Court of Appeals, issued June 13, 2017 (Docket No. 330609).

reverse the order dismissing the trespass claim and granting equitable relief and remand for further proceedings consistent with this opinion.

## I. BASIC FACTS

Handicraft owns property at 327-341 E. Liberty St, Ann Arbor (the Handicraft property); Cramer is the registered agent of Handicraft and exercises control over it. The Trust owns property at 336 E. Washington St, Ann Arbor, Michigan (the Trust property). The history of the properties was set forth in this Court's prior opinion:

> Kent's relatives have owned the Trust property for decades. Kent's great-aunt Caroline Wagner owned the property in 1940. Wagner conveyed the property to Kent's parents, Ben and Laura Burkhart. The property was placed in a trust, which Kent began managing in 2009. A warranty deed describes the property as "[t]he West half of lot number seven" at the corner of East Washington and Division. Significantly, the Trust's lot contains a garage.

> The Handicraft property consists of part of lots 9 and 12 and all of lots 10 and 11. Handicraft Furniture Co had a property interest in lots 10 and 11 as of October 8, 1940. Then, Handicraft shared property interests with the Lepard family. In 1967, Amelia P. Raiser's estate conveyed a portion of lots 9 and 10 to Handicraft Furniture Co and Sara W. Lepard as tenants in common. Sara conveyed property to Handicraft Furniture Co later in 1967. Handicraft purchased the remainder of the Handicraft property from Lepard Liberty Partnership in 1996.

> At all relevant times, either Division Street Parking, LLC, or First Division, LLC, owned "Lot 8 and the east half of Lot 7, directly north of the Handicraft Property."

> * * *

> A series of agreements created a 12-foot wide driveway that extends from the western edge of the alley on the Trust property and lot 11 of the Handicraft property to the eastern edge of the alley on lots 8 and 9. This driveway provides the garage its only access to Division Street.

> Significantly, Wagner and Handicraft granted each other express easements for rights of way in 1940. Wagner "grant[ed], bargain[ed], s[old], release[d], remise[d] and forever quit claim[ed] unto" Handicraft and "its successors and assigns, a right of way upon, over and across the south 6 feet of the west half of lot 7, . . . to be used in common with the owner or occupant of said land." Handicraft "grant[ed], bargain[ed], s[old], remise[d], release[d] and forever quit claim[ed] unto" Wagner "and to her heirs and assigns forever, a right of way upon, over and across the north 6 feet of the west half of lot 10" and "a right of way upon, over and across . . . the east 21 feet of lot 11" "to be used in common with the owner or occupant of said land." (Emphasis in original.)

> * * *

-2-

Handicraft stated that a rear loading dock was built in a Handicraft building near the western edge of the alley in the 1960s. The owners of the Trust and Handicraft properties had disputes over the use of the rear loading dock, and how that use impacted access to the driveway and garage, in the 1960s, 1970s, and 2000s.

Significantly, the trial court stated that Cort Business Services Corporation rented the space at 341 E. Liberty on the Handicraft property in 2007. Cramer testified that Kent was "harassing" Cort's customers. Cort filed suit against Kent. The trial court enjoined and restrained Kent "from having any contact with the customers and/or employees of Cort . . . regarding vehicles in the parking area, loading dock, and access easements at the rear of 341 E. Liberty." Additionally, the trial court enjoined and restrained Cort and its "officers, agents, servants and employees, and those persons in active concert or participation with them . . . from allowing customers, suppliers, vendors or employees . . . to park on that area at the rear of said business location known . . . as the 'ingress—egress easement area.' "

In the instant dispute, the Trust claimed that Handicraft and Cramer blocked access to its garage. Kent swore that "various obstacles" have been in front of the rear dock "almost on a daily basis" for "very long periods" of time, including overnight. Amy Balogh testified that she rents an apartment on the Trust property and parks in the Trust garage. Balogh stated that she is often blocked from accessing the garage because objects are left in the alley or trucks are "parked" or left unattended in the alley. Additionally, the Trust and Kent claimed that entering and exiting the garage requires driving on portions of the Handicraft property outside of the driveway, as described below. Finally, the Trust claimed that Handicraft caused water to drain onto its property. Cramer testified that Handicraft resurfaced the six foot portion of the driveway on the Handicraft property in late August 2014 or early September 2014 because the area was worn and had broken concreate that allowed for puddling of water. Additionally, Cramer explained that Handicraft opened a plugged drain near the rear loading dock. Kent stated that Handicraft altered the surface of its property, which "raised the grade" of the area so that the Handicraft property sloped toward the Trust property and caused water to flow into the garage.

Accordingly, the Trust filed suit against Handicraft and Cramer seeking injunctive relief to prevent Handicraft and Cramer from obstructing its rights of ways. The Trust then brought a claim for trespass, claiming that Handicraft and Cramer trespassed on the Trust's property and in the "rights of ways." The Trust brought another claim for quiet title and asked the trial court to enter declaratory judgment finding that the Trust had a prescriptive easement over property at "[t]he north 12 feet of Lot 9 and the north 12 feet of the east half of Lot 10 together with the north 12 feet of the west half of Lot 10." The Trust also brought a claim for nuisance in fact.

Handicraft and Cramer filed a counterclaim against the Trust seeking a declaratory judgment ruling that the Trust's interest in the alley is limited to the

recorded documents and that Handicraft may load/unload in the alley. Handicraft and Cramer then moved for summary disposition on its claim for declaratory relief, seeking "an order declaring that the Easement does not prohibit Handicraft, or its tenants, from using the Easement, Alley, and Right of Way for loading and unloading of delivery vehicles." Ultimately, the trial court granted Handicraft's and Cramer's request for declaratory relief in part, stating that Handicraft can use any of its property so long as it "does not unreasonably interfere with [the Trust's] ingress and egress," stating that the express easement did not prevent Handicraft or its tenants "from the active loading and unloading of delivery vehicles in the Right of Way," and allowing the activity.

Handicraft and Cramer also moved for summary disposition on all of the Trust's claims. The trial court ultimately granted the motion in part, dismissing the Trust's injunctive relief, trespass, and quiet title claims.

The case proceeded to a bench trial on the Trust's prescriptive easement and nuisance claims. After trial, the trial court dismissed the Trust's prescriptive easement claim, found that Handicraft created a nuisance in fact, and gave the Trust two options for relief . . . .

The Trust and Kent moved for an amended judgment or a new trial, challenging the trial court's orders granting Handicraft and Cramer declaratory judgment, the order granting summary judgment for Handicraft and Cramer on the Trust's claims for injunctive relief, trespass, and quiet title, the order dismissing the Trust's prescriptive easement claim, and the ordered nuisance remedy. The trial court denied the motion. [*Burkhart Trust v Cramer*, unpublished per curiam opinion of the Court of Appeals, issued June 13, 2017 (Docket No. 330609), pp 2-6 (citations omitted).]

This Court concluded that the trial court did not err by granting summary disposition for Handicraft and Cramer, nor did it abuse its discretion in dismissing the Trust's claim for injunctive relief. *Id*. at pp 7-8. Further, this Court held that the trial court did not clearly err by "finding that the express easement allowed Handicraft to actively load and unload in the right of way so long as it did not unreasonably interfere with the Trust's right to ingress and egress." *Id*. at 9. As a result, this Court affirmed the order granting summary disposition to defendants' on their request for declaratory judgment. *Id*. This Court also affirmed the trial court's order denying the Trust's prescriptive easement claim, *id*. at 10, and the trial court's remedy for the Trust's nuisance claim, *id*. at 11-12. However, this Court reversed the trial court order summarily dismissing the Trust's trespass claim. In doing so, this Court explained:

In this case, the Trust claims that Handicraft and Cramer trespassed on their rights of ways, or in the driveway. The Trust only owns a portion of the driveway on lot 7. The 1940 agreement granted Handicraft a "right of way upon, over and across the south 6 feet of the west half of lot 7 . . . to be used in common with the owner or occupant of said land." Therefore, Handicraft and Cramer could only be liable to the Trust for a trespass committed by exceeding the scope of the express easement on lot 7.

When the trial court ultimately granted summary disposition on the trespass claim, the record contained evidence that Cramer swore that its tenants used both loading docks in the alley and that its tenants used the express easement. Emilie Parker, the manager of Handicraft's tenant at 337 E. Liberty, swore that her store used the rear loading dock. Adam Baru, the owner of the businesses renting Handicraft's property at 341 E. Liberty, swore that commercial delivery vehicles used the alley while loading and unloading. Balogh testified that trucks in the alley have made it difficult for her to enter and exit her garage on multiple occasions. Balogh stated that vehicles parked in the alley and that she has at times been unable to locate a vehicle's driver. Trust tenant Nina Howard wrote a letter indicating that use of both loading docks has prevented her from leaving the garage. Kent swore that "various obstacles" were in the area in front of the rear dock "almost on a daily basis," some of which were present for "very long periods," including overnight. The Trust and Kent provided the trial court with multiple, dated photographs that show multiple vehicles stopped in multiple locations in the alley . Some photos do not show persons or materials.

When viewing this evidence in the light most favorable to non-moving party the Trust, we find that there is a genuine issue of material fact as to whether persons exceeded the scope of the express easement on the Trust's property. Exceeding the scope of the easement would constitute a trespass. See *D'Andrea* [*v AT&T Mich*], 289 Mich App [70,] 73[; 795 NW2d 620 (2010)]; *Wiggins* [*v City of Burton*], 291 Mich App [532,] 556[; 805 NW2d 517 (2011)]. Even if this trespass was not committed by Handicraft or Cramer directly, Cramer's knowledge of Handicraft's tenants' use of the easement suggests that Handicraft and Cramer authorized, condoned, ratified, or benefitted from the trespass, making them joint trespassers. See *Kratze* [*v Indep Order of Oddfellows, Garden City Lodge No 11*], 190 Mich App [38,] 43[; 475 NW2d 405 (1991), rev'd in part on other grounds 442 Mich 136 (1993)]. Therefore, we reverse the trial court's order dismissing the Trust's trespass claim and remand for trial. [*Id*. at pp 9-10.]

As explained above, on remand, the court limited the scope of the trespass claim. The court then proceeded with a bench trial, denied defendants' motion for a directed verdict, and then adjourned the matter so that the parties could submit proposals for an equitable resolution of their ongoing dispute. Thereafter, the court entered an order dismissing the trespass claim and granting equitable relief consistent with defendants' proposed judgment.

The Trust and Kent moved for reconsideration, arguing that, although they had not submitted a proposed resolution, they should have had the option to consent to defendants' proposed judgment or to continue with trial on the trespass claim. The Trust and Kent contended that although the order would be "an agreeable resolution if completely implemented and followed," they nevertheless opposed the order because part of the relief was dependent upon the City of Ann Arbor designating a portion of Division Street as a loading zone. They explained that, unless the City did, in fact, make such a designation, the resolution proposed by defendants' was unacceptable. The court denied the motion. This appeal follows.

## II. SCOPE OF TRIAL

The Trust and Kent first argue that the trial court erred by limiting the scope of the trespass claim to their initial claim that defendants—or their assigns or tenants—had trespassed by parking vehicles, by loading and unloading vehicles, and by leaving other physical obstructions in the right of way in a manner that blocked access to the garage on the Trust property. They assert that in addition to that claim, the trial court should have allowed them to litigate allegations that defendants had trespassed on the Trust property when they made improvements to the Handicraft property that caused water to run onto the Trust's property.

In support of their argument, the Trust and Kent note that this Court's prior opinion analyzed the trespass claim as it related to whether vehicles were trespassing, but it never considered whether a trespass was committed by water running onto the Trust Property. See *Burkhart Trust*, unpub op at 9-10 (referring only to obstructions in the right-of-way created by parked vehicles, vehicles loading or unloading, or obstructions left for extended periods of time in the right-of-way). Because the issue of whether there was a trespass by water was not addressed in the prior appeal, the Trust and Kent assert that the law-of-the-case doctrine did not preclude the trial court from considering the issue on remand. We agree that the law-of-the case doctrine does not resolve this issue. Under that doctrine, on remand from an appellate court, a trial court may not take any action "that is inconsistent with the judgment of the appellate court." *Schumacher v Dep't of Natural Resources*, 275 Mich App 121, 127-128; 737 NW2d 782 (2007) (quotation marks and citation omitted). "However, the law of the case only applies to issues implicitly or explicitly decided in the previous appeal." *Id.* at 128. Because this Court proffered no opinion as to whether the Trust and Kent could litigate a claim for trespass by water, the law-of-the-case doctrine is not applicable to bar such a claim on remand.

That does not, however, entitle the Trust and Kent to relief. The trial court was not required to permit the Trust to proceed to trial on a claim that had never properly been pleaded either in the initial complaint or in a complaint amended under MCR 2.118.

In 2014, the Trust brought a single claim of trespass against defendants. The complaint alleged that "[i]n connection" with defendants' "aforementioned obstructions" of the Trust property, defendants had "entered onto part of the" Trust property. The "aforementioned obstructions" referred to the Trust's allegations that defendants and their assignees or tenants had regularly obstructed the Trust's use of the easement by parking vehicles in the easement, by loading or unloading vehicles in the easement, and by blocking the easement by placing dumpsters or construction debris in the right of way. No allegations were pleaded in relations to runoff water flowing from the Handicraft property onto the Trust property. After this Court remanded for trial on the trespass claim related to vehicles and physical obstructions, the Trust did not move to amend their complaint to add a claim for trespass by water. See MCR 2.118(A)(2).[2] Consequently,

---

[2] Moreover, even if such a motion had been made, the trial court would not have abused its discretion by denying it. Although a motion to amend a complaint should be freely granted "when justice so requires," it may be denied if there is undue delay or if the amendment would be futile. *Wolfenbarger v Wright*, 336 Mich App 1, 19; 969 NW2d 518 (2021) (quotation marks and citation

because the Trust did not plead a claim for trespass by water, the trial court was not required to permit it to proceed to trial on its unpled claim.

## III. EQUITABLE RELIEF

The Trust and Kent next contend that the trial court erred by dismissing the Trust's trespass claim and adopting defendants' proposed judgment without first providing the Trust an opportunity to respond, without a hearing, and without finishing trial. In response, defendants suggest that the parties stipulated to allow the court to grant equitable relief on the trespass claim. We agree with the Trust and Kent.

Before crafting an equitable remedy for trespass, the trial court first had to resolve the Trust's claim for trespass. It did not do so. Instead, it denied defendants' motion for a directed verdict. It then entered an order dismissing the trespass claim. The basis for the dismissal was not stated—directly or indirectly—by the trial court, and our review of the record reveals no legal justification for the dismissal.

MCR 2.504 governs the dismissal of an action. It provides that an action may be dismissed voluntarily or involuntarily. See MCR 2.504(A) and (B). Review of the record reflects that the parties did not stipulate to voluntarily dismiss the trespass claim under MCR 2.504(A)(1), which provides:

**(A) Voluntary Dismissal; Effect.**

(1) *By Plaintiff; by Stipulation*. Subject to the provisions of MCR 2.420 and MCR 3.501(E), an action may be dismissed by the plaintiff without an order of the court and on the payment of costs

\* \* \*

---

omitted). Here, the initial complaint was filed in 2014. The trespass claim—as stated in the complaint—was dismissed by summary disposition in 2015. The case then proceeded to trial. Following the trial, the court entered an order finding for the Trust on its claim of nuisance in fact as it related to the Trust's claim that defendants' actions had led to water runoff onto the Trust property. The Trust appealed the court's decision, and, in 2017, this Court reversed on the trespass claim, but affirmed in all other respects. See *Burkhart Trust*, unpub op p 13. Therefore, the record reflects that although the issue with the water runoff began in August or September 2014, see *id*. at 5, the Trust has not moved to amend its complaint to add an allegation of trespass by water between then and now. A delay between August or September 2014 (when the alleged wrong began) and December 2018 (when the court entered its order limiting the trespass claim for trial) would constitute an undue delay so as to justify a denial of a motion to amend. Moreover, given that the parties actually litigated the issue of whether the runoff water was a nuisance in fact, the doctrine of res judicata would preclude litigation of a claim of trespass by water that would be reliant upon the same evidence or essential facts. See generally *Dart v Dart*, 460 Mich 573, 586; 597 NW2d 82 (1999) and *Ditmore v Michalik*, 244 Mich App 569, 576; 625 NW2d 462 (2001).

(b) by filing a stipulation of dismissal signed by all the parties.

Here, the order of dismissal was proposed by defendants and was signed only by the trial court. Because it was not signed by all the parties, dismissal could not be properly granted under MCR 2.118(A)(1)(b).

The court's order dismissing the trespass claim stated that the parties had "stipulated to the authority of the Court to grant equitable relief to address the use of the shared easement by the parties." Yet, although the parties consented to the adjournment of the trial, stipulated that the court retained the power to craft an equitable resolution, and agreed to submit proposed equitable resolutions, nothing on the record indicates that they agreed that the court, upon receiving the proposals, could resolve the matter without first providing an opportunity for both parties to consent to or object to the proposed resolution. Instead, defendants' lawyer stated that his client

> would like the opportunity to maybe submit a proposal. Something, you know, after he's spoken with the tenants, and you know, can kind of pin down what this might actually look like. Ultimately, the Court would be the determining of what the rules may be. And I guess we would just ask for the opportunity to submit a proposal, have an opportunity to review what the Court drafts, and maybe file an objection, if necessary.

The lawyer for the Trust and Ken "agree[d] with that procedure." Thereafter, the court stated:

> I'll look for submissions from each of you within four weeks. And if you resolve it on your own, the you don't need to submit, obviously, separate proposals. If you don't resolve it on your own, then I'll take your submissions and then schedule a time to hear [defendants' witness]."

Thus, to the extent that the court believed it had the power to enter an order granting equitable relief without first properly dismissing the trespass claim, such a belief is clearly refuted by the record. There was no stipulation by the parties to allow the court to grant equitable relief without first permitting them to object to the proposed relief.

Next, MCR 2.504(B)(1) provides that an action may be involuntarily dismissed by order of the court "[i]f a party fails to comply with these rules or a court order . . . ." In this case, the court issued an oral order indicating that the trial was adjourned for four weeks and that, within that period, the parties should submit proposed equitable resolutions of their dispute. Only defendants submitted a proposed judgment. The order dismissing the trespass claim, however, does not indicate that the claim was being dismissed as a sanction for the Trust and Kent's failure to submit a proposed resolution. Nor does it appear that was the court's intent given that it merely adopted, verbatim, the proposed judgment submitted by defendants. Further, although the court stated in its decision denying the motion for reconsideration, that the Trust had "failed to submit a proposal on time," it did not make any statements indicating that the dismissal of the trespass claim was a sanction in response to that failure. As a result, we conclude that the court did not dismiss the claim under MCR 2.504(B)(1), and, if it intended to do so, it abused its discretion by imposing the drastic sanction of dismissal in response to what appears to be an accidental failure to comply with a less than clearly stated oral order of the trial court. See *Woods v SLB Property Management,*

-8-

*LLC*, 277 Mich App 622, 631; 750 NW2d 228 (2008) (noting that the sanction of dismissal under MCR 2.504(B)(1) "is a drastic sanction that requires" the court to consider several factors).[3]

In sum, the record reflects that the equitable resolution adopted by the trial court took the form of a mandatory injunction. It required defendants to take a number of steps to prevent its tenants or others from impeding the right-of-way, including posting no-parking signs next to the easement area, posting a loading-zone-only sign near a loading dock, painting yellow horizontal lines to indicating the no-parking and loading-zone-only areas, advising its tenants that parking was not permitted at any time, and submitting a written request to the City of Ann Arbor to designate a street loading zone in the area north of the shared easement. Although this relief appears to be tailored to remedying the trespass issue between the parties, the court could not order such relief without first addressing the trespass claim. The claim could have been dismissed by stipulation of the parties, but the record reflects that it was not. The claim could have been resolved by the trial court finding that a trespass had been committed by defendants, but it was not. Because the trial court could not grant equitable relief without first resolving the trespass claim and because there is no legal basis to support the court's order dismissing the trespass claim, we reverse and remand for further proceedings. On remand, the trial court shall first resolve the trespass claim. It may do so by continuing the trial on the claim. The claim may also be resolved by a stipulation to dismiss agreed to be the parties in accord with MCR 2.504(A)(1). Nothing in this opinion precludes the Court from granting equitable relief; however, it may only do so after the claim for trespass has been properly resolved.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. No taxable costs are awarded, neither party having prevailed in full. MCR 7.219(A). We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ David H. Sawyer
/s/ Michael J. Kelly

---

[3] The factors include:

> (1) whether the violation was willful or accidental; (2) the party's history of refusing to comply with previous court orders; (3) the prejudice to the opposing party; (4) whether there exists a history of deliberate delay; (5) the degree of compliance with other parts of the court's orders; (6) attempts to cure the defect; and (7) whether a lesser sanction would better serve the interests of justice. [*Woods*, 277 Mich App at 631 (quotation marks and citation omitted).]

The trial court order dismissing the trespass claim made no reference to any of the above factors and the record is devoid of any indication that any of the factors were considered by the trial court.