HOOVER *v.* CRANE.

1. WATERS AND WATERCOURSES—RIPARIAN OWNERS—INLAND LAKES.
   A right of action by one riparian owner of land abutting an inland lake does not arise against another riparian owner until the latter makes a use of the water that is unreasonable under all the circumstances.

2. SAME—INLAND LAKES—REASONABLE USE.
   Whether or not a use of the water of an inland lake is reasonable must be determined from a consideration of what the use is for, its extent, duration, necessity, its application, the nature and size of the lake, the several uses to which the water is put, the extent of the injury to the one proprietor and of the benefit to the other, and all other facts which may bear upon the reasonableness of the use.

3. SAME—RESORT OWNERS—IRRIGATION OF ORCHARD—REASONABLE USE.
   Decree in resort owners' suit to restrain defendant riparian owner of 10% of the frontage of an inland lake affording him the right to use water therefrom for irrigation of his 45-acre

------

REFERENCES FOR POINTS IN HEADNOTES

[1] 56 Am Jur, Waters § 274.
[2] 56 Am Jur, Waters § 372.
[3] 56 Am Jur, Waters § 321.
    Relative riparian or littoral rights respecting the removal of water from a natural, private, nonnavigable lake. 54 ALR2d 1450.

pear orchard, unlimited in amount until the water ceases to drain in the outlet and thereafter limited by metered use to 1/4 inch of water from the area of the lake, with right of any party to petition the court to take further proofs for other and additional relief based on changed conditions *held*, reasonable under record presented.

Appeal from Allegan; Smith (Raymond L.), J. Submitted June 15, 1960. (Docket No. 54, Calendar No. 48,575.) Decided December 2, 1960.

Bill by Harold A. Hoover and a group of other riparian property owners against Blakslee Crane to restrain use of lake waters for irrigation purposes. Decree defining and granting defendant reasonable use. Plaintiffs appeal. Affirmed.

*Leo W. Hoffman* and *Frederick D. McDonald,* for plaintiffs.

*Chester A. Ray,* for defendant.

EDWARDS, J. This appeal represents a controversy between plaintiff cottage and resort owners on an inland Michigan lake and defendant, a farmer with a fruit orchard, who was using the lake water for irrigation. The chancellor who heard the matter ruled that defendant had a right to reasonable use of lake water. The decree defined such reasonable use in terms which were unsatisfactory to plaintiffs who have appealed.

The testimony taken before the chancellor pertained to the situation at Hutchins lake, in Allegan county, during the summer of 1958. Defendant is a fruit farmer who owns a 180-acre farm abutting on the lake. Hutchins lake has an area of 350 acres in a normal season. Seventy-five cottages and several farms, including defendant's, abut on it. Defendant's frontage is approximately 1/4 mile, or about 10% of the frontage of the lake.

Hutchins lake is spring fed. It has no inlet but does have an outlet which drains south. Frequently in the summertime the water level falls so that the flow at the outlet ceases.

All witnesses agreed that the summer of 1958 was exceedingly dry and plaintiffs' witnesses testified that Hutchins lake's level was the lowest it had ever been in their memory. Early in August, defendant began irrigation of his 50-acre pear orchard by pumping water out of Hutchins lake. During that month the lake level fell 6 to 8 inches—the water line receded 50 to 60 feet and cottagers experienced severe difficulties with boating and swimming.

The testimony indicated that during August and September of 1958, defendant was taking water from the lake through a 5-inch pipe and pumping it through 4 lines and 120 sprinklers. The defendant testified that the pump used had a theoretical capacity of 500 to 600 gallons, but that the tractor used for the pump would not operate it at capacity. Defendant computed his total water usage in 1958 at an amount which would represent 45/100 of an inch of a lake the size of Hutchins lake. Plaintiffs' testimony tended to dispute this figure and to establish much greater pumpage.

The tenor of plaintiffs' testimony was to attribute the 6- to 8-inch drop in the Hutchins lake level in that summer to defendant's irrigation activities. Defendant contended that the decrease was due to natural causes, that the irrigation was of great benefit to him and contributed only slightly to plaintiff's discomfiture. He suggests to us:

"One could fairly say that because plaintiffs couldn't grapple with the unknown causes that admittedly occasioned a greater part of the injury complained of, they chose to grapple mightily with the defendant because he is known and visible."

The circuit judge found it impossible to determine a normal lake level from the testimony, except that the normal summer level of the lake is lower than the level at which the lake ceases to drain into the outlet. He apparently felt that plaintiffs' problems were due much more to the abnormal weather conditions of the summer of 1958 than to defendant's irrigation activities.

His opinion concluded:

"Accepting the reasonable use theory advanced by plaintiffs it appears to the court that the most equitable disposition of this case would be to allow defendant to use water from the lake until such time when his use interferes with the normal use of his neighbors. One quarter inch of water from the lake ought not to interfere with the rights and uses of defendant's neighbors and this quantity of water ought to be sufficient in time of need to service 45 acres of pears. A meter at the pump, sealed if need be, ought to be a sufficient safeguard. Pumping should not be permitted between the hours of 11 p.m. and 7 a.m. Water need be metered only at such times as there is no drainage into the outlet.

"The decree in this suit may provide that the case be kept open for the submission of future petitions and proofs as the conditions permit or require."

The decree entered provided:

"It is further ordered, adjudged and decreed, that such use of water for the irrigation of said 45-acre pear orchard shall not be limited so long as water from Hutchins lake drains into the outlet thereof; that when the water from Hutchins lake no longer drains in the outlet, that defendant shall not be entitled to use more than 1/4 inch of water from the area of Hutchins lake, which is established to be 352 acres; and that when the water of Hutchins lake no longer drains into the outlet, a meter shall be placed on the pump to determine the amount of water removed from Hutchins lake by the defendant.

"It is further ordered, adjudged and decreed, that either the plaintiffs, or any of them, or the defendant may petition the court to take further proofs in this cause for other and additional relief if the circumstances or experience of the parties hereto indicate that the relief herein granted is unreasonable or inadequate."

Plaintiffs on appeal assert that any irrigation use when the lake level is below the outlet is unreasonable.

Michigan has adopted the reasonable-use rule in determining the conflicting rights of riparian owners to the use of lake water.

In 1874, Justice COOLEY said:

"It is therefore not a diminution in the quantity of the water alone, or an alteration in its flow, or either or both of these circumstances combined with injury, that will give a right of action, if in view of all the circumstances, and having regard to equality of right in others, that which has been done and which causes the injury is not unreasonable. In other words, the injury that is incidental to a reasonable enjoyment of the common right can demand no redress." *Dumont* v. *Kellogg,* 29 Mich 420, 425 (18 Am Rep 102).

And in *People* v. *Hulbert,* 131 Mich 156 (64 LRA 265, 100 Am St Rep 588), the Court, quoting from *Gehlen Bros.* v. *Knorr,* 101 Iowa 700 (70 NW 757, 36 LRA 697, 63 Am St Rep 416), said (p 170) :

"No statement can be made as to what is such reasonable use which will, without variation or qualification, apply to the facts of every case. But in determining whether a use is reasonable we must consider what the use is for; its extent, duration, necessity, and its application; the nature and size of the stream, and the several uses to which it is put; the extent of the injury to the one proprietor and of the benefit to the other; and all other facts which

may bear upon the reasonableness of the use. *Red River Roller Mills* v. *Wright,* 30 Minn 249 (15 NW 167, 44 Am Rep 194), and cases cited."

See, also, *Merkel* v. *Consumers Power Co.,* 220 Mich 128.

The Michigan view is in general accord with 4 Restatement, Torts, §§ 851–853.

The first of these sections states the general principle thus:

"§ 851. *Intentional harm by one riparian proprietor to another.*

"Unless he has a special privilege, a riparian proprietor on a watercourse or lake who, in using the water therein, intentionally causes substantial harm to another riparian proprietor thereon through invasion of such other's interest in the use of water therein, is liable to the other in an action for damages if, but only if, the harmful use of water is unreasonable in respect to the other proprietor."

In *Harris* v. *Brooks,* 225 Ark 436 (283 SW2d 129, 54 ALR2d 1440), the Arkansas supreme court, faced with a somewhat similar problem to ours, restrained the use of water for irrigation when a lake level fell below the point which the court held to be the normal one. Appellants point to this case as authority.

The principal distinguishing feature between the *Harris Case* and the instant one is that in the present case the court was unable to determine the normal lake level with any certainty, and definitely rejected plaintiffs' implied contention that it corresponded to the level of the lake when the water was even with the outlet. *Cf. Kennedy* v. *Niles Water Supply Co.,* 173 Mich 474 (43 LRA NS 836).

We interpret the circuit judge's decree as affording defendant the total metered equivalent in pumpage of 1/4 inch of the content of Hutchins lake to be used in any dry period in between the cessation of

flow from the outlet and the date when such flow recommences. Where the decree also provides for the case to be kept open for future petitions based on changed conditions, it would seem to afford as much protection for plaintiffs as to the future as this record warrants.

Both resort use and agricultural use of the lake are entirely legitimate purposes. Neither serves to remove water from the watershed. There is, however, no doubt that the irrigation use does occasion some water loss due to increased evaporation and absorption. Indeed, extensive irrigation might constitute a threat to the very existence of the lake in which all riparian owners have a stake; and at some point the use of the water which causes loss must yield to the common good.

The question on this appeal is, of course, whether the chancellor's determination of this point was unreasonable as to plaintiffs. On this record, we cannot overrule the circuit judge's view that most of plaintiffs' 1958 plight was due to natural causes. Nor can we say, if this be the only irrigation use intended and the only water diversion sought, that use of the amount provided in the decree during the dry season is unreasonable in respect to other riparian owners.

Affirmed. Costs to appellee.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, KAVANAGH, and SOURIS, JJ., concurred.