### WEST MICHIGAN DOCK & MARKET CORPORATION v LAKELAND INVESTMENTS

Docket No. 164082. Submitted December 14, 1994, at Grand Rapids. Decided May 12, 1995, at 9:20 A.M.

West Michigan Dock & Market Corporation brought an action in the Muskegon Circuit Court against Lakeland Investments and others, seeking to quiet title to the bottom land of a boat slip in Muskegon Lake. The boat slip lies between the plaintiff's pier on the east and the defendants' pier on the west. The piers are connected by property owned by the plaintiff on the south. At issue is the western forty feet of the 390-foot-wide slip, lying just east of the defendants' pier. The plaintiff claimed ownership of the entire bottom land of the slip and asserted that the defendants were precluded from any long-term dockage of vessels in the slip. The defendants claimed in the alternative that the bottom land was owned by the State of Michigan, that they owned the bottom land to the center line of the slip, or that they had acquired the west forty feet of the slip by adverse possession. The court, R. Max Daniels, J., determined before trial that the defendants had not acquired any property interest in the western forty feet of the boat slip by means of adverse possession, prescriptive easement, or acquiescence, determined as a matter of law that the plaintiff was the owner of the entire bottom land of the slip, and, following a bench trial, held that a reasonable riparian use of the slip would be to allow the defendants to load and unload boats and ships in the slip but to prohibit the defendants from anchoring vessels to the bottom within the slip and from docking vessels in the slip for more than one week without the plaintiff's permission. The court further held that to the extent that the defendants' improvements to their pier encroached on the plaintiff's property, the improvements could be kept in place if the defendants paid the plaintiff $5,000 within sixty days. The defendants appealed, and the plaintiff cross appealed.

The Court of Appeals *held:*

---

REFERENCES

Am Jur 2d, Waters §§ 43-45, 118, 260-269.

See ALR Index under Lakes and Ponds; Riparian and Littoral Ownership and Rights.

1. Muskegon Lake is an inland lake within the meaning of the Inland Lakes and Streams Act. Further, the defendant failed to present any evidence to suggest that the holding in *Rice v Ruddiman*, 10 Mich 125 (1862), that Muskegon Lake is not part of Lake Michigan is not still controlling law. Accordingly, the trial court properly held that the plaintiff, as an owner of property on an inland lake, owns the bottom land of the lake to its center line and that the bottom land is not owned by the State of Michigan.

2. The trial court's conclusion that the entire bottom land of the slip was owned by the plaintiff was supported by the testimony of the plaintiff's surveyor. That testimony largely was uncontroverted and clearly demonstrated that the surveyor used the proper method to determine the location of the riparian lands.

3. Because the pleadings clearly showed that the defendants and their predecessor in interest used the slip with the plaintiff's permission until 1989, the trial court properly determined as a matter of law that the defendants could not acquire property rights to the western forty feet of the slip by adverse possession, prescriptive easement, or acquiescence, because such permissive use cannot be deemed to be the hostile act necessary to acquire a property interest by those means.

4. The trial court's determination concerning what constitutes the defendants' reasonable use of the waters over the plaintiff's riparian lands is supported by the record.

5. The trial court did not err in failing to order the removal of the encroaching section of the defendants' pier. In view of the fact that there was no evidence that the encroachment was intentional, the court properly permitted the slight encroachment to continue upon the defendants' payment of damages for the trespass.

Affirmed.

1. WATERS AND WATERCOURSES — MUSKEGON LAKE — INLAND LAKES AND STREAMS ACT.

Muskegon Lake is an inland lake within the meaning of the Inland Lakes and Streams Act and is not part of Lake Michigan (MCL 281.952[f]; MSA 11.475[2][f]).

2. WATERS AND WATERCOURSES — RIPARIAN OWNERS — REASONABLE USE.

Riparian owners on an inland lake may use the surface of the entire lake as long as their use does not interfere with the reasonable use of the waters by other riparian owners; a court, in determining what constitutes reasonable use, should con-

sider the size, character, and natural state of the watercourse, the type and purpose of the proposed uses and their effect upon the watercourse, and the benefit to the user compared with the injury to other riparian owners.

*Culver, Lague & McNally* (by *Eric R. Gielow* and *Chris D. Slater*), for the plaintiff.

*Parmenter O'Toole* (by *Arthur M. Rude*), for the defendant.

Before: MacKenzie, P.J., and J. W. Fitzgerald* and C. O. Grathwohl,** JJ.

MacKenzie, P.J. This case involves a dispute over the ownership of, and rights to, a boat slip. Defendants, the owners of a parcel of property that is the site of a marine contracting business (hereafter Lakeland or defendant), appeal as of right from an opinion and order in favor of plaintiff. Plaintiff cross appeals from the same order. We affirm.

Plaintiff and defendant own adjacent waterfront industrial properties on Muskegon Lake. Each parcel includes a pier that extends outward into the lake. These two piers are separated by approximately 390 feet of water that forms a fully navigable boat slip. The pier on plaintiff's property comprises the eastern side of the slip; the shoreline portion of plaintiff's property comprises the southern end of the slip. Defendant's pier is on the western side of the slip, while Muskegon Lake is at the open, northern end. Another boat slip is located on the other side of defendant's pier; defendant indicates that it controls thirty feet of that slip.

---

* Former Supreme Court justice, sitting on the Court of Appeals by assignment pursuant to Administrative Order No. 1994-7.

** Circuit judge, sitting on the Court of Appeals by assignment.

Defendant and its predecessors have used the west forty feet of the subject boat slip for the dockage of their business vessels, including tugboats and various barges employed in the marine contracting industry, for a total of approximately sixty years. That practice proved acceptable until 1989, when defendant leased its property to a marina and made improvements to its pier that extended into the boat slip. The controversy temporarily ended when the marina went bankrupt. It was revived in 1991, however, when defendant moored a World War II vintage submarine in the slip as a public museum.

Although the submarine was moved elsewhere the following year, the parties proceeded with this action to quiet title. Plaintiff claimed that the entire bottom land of the slip was within the boundaries of its property, precluding defendant from any long-term dockage of its vessels in the slip. Defendant claimed alternatively that the bottom land was owned by the State of Michigan, that it owned the bottom land to the center line of the slip, or that it had acquired the west forty feet of the slip by adverse possession.

Upon cross motions for summary disposition, the trial court determined as a matter of law that the boundary between the parties' parcels is the western shore of the boat slip, so that plaintiff is the owner of the entire bottom land of the boat slip. The court further determined as a matter of law that Lakeland had not acquired ownership of a portion of the slip by adverse possession. Finally, the court determined that Lakeland, as a riparian owner on Muskegon Lake, had the right to reasonable use of the waters of the boat slip, and that reasonable riparian use was a question of fact requiring a trial.

Following a bench trial, the court entered an

opinion and order allowing Lakeland to load and unload boats and ships in the slip, but prohibiting it from anchoring vessels to the slip's lake bed and from docking vessels for more than one week without plaintiff's permission. Additionally, to the extent that defendant's improvements to its dock encroached on plaintiff's property, the court allowed defendant to keep the improvements in place upon payment of $5,000 to plaintiff within sixty days; in the absence of such payment, the encroachment was ordered removed at defendant's expense. The court also determined that plaintiff was not entitled to damages for defendant's past use of the slip and that neither party was entitled to costs or fees.

In two related arguments on appeal, defendant first contends that the trial court erred in determining that plaintiff owns the bottom land of the boat slip. Specifically, defendant contends that because the State of Michigan owns the bottom land of the Great Lakes and Muskegon Lake is part of the Lake Michigan, plaintiff has no ownership in the bottom land of the slip and defendant is entitled to share the navigable water space in the slip with all other riparian owners on the lake. We disagree and find no error in the trial court's conclusion that plaintiff owned the slip.

While title to lands covered by the Great Lakes belongs to the state, *Flanders Industries, Inc v Michigan,* 203 Mich App 15, 27; 512 NW2d 328 (1993), the owner of property bounded by an inland watercourse owns the bottom land of the lake or stream to the centerline. *Theis v Howland,* 424 Mich 282, 288, n 2; 380 NW2d 463 (1985); *Gregory v LaFaive,* 172 Mich App 354, 361-362; 431 NW2d 511 (1988). Testimony before the trial court in this case established that Muskegon Lake meets the definition of "inland lake" as set forth in the

Inland Lakes and Streams Act, MCL 281.952(f); MSA 11.475(2)(f). Further, our Supreme Court confirmed in *Rice v Ruddiman,* 10 Mich 125, 135-138, 143-146 (1862), that Muskegon Lake is not part of Lake Michigan. Defendant failed to present evidence in the trial court concerning why widening the mouth of Muskegon Lake would alter the status of the lake or make the *Rice* decision inapplicable here. We therefore conclude that the trial court did not err in treating Muskegon Lake as an inland lake rather than part of the Great Lakes.

Defendant next claims that, if plaintiff has an ownership interest in the bottom land of the slip as part of an inland lake, then the trial court erred in determining the location of plaintiff's western riparian boundary. The claim is also without merit.

As previously noted, the title of a riparian land owner extends to the middle line of an inland lake. *Gregory, supra,* pp 361-362. To establish riparian boundaries on an oblong lake affected by accretion, such as Muskegon Lake, a line is drawn from the point where the property line met the original lakeshore to a median center line of the lake as nearly perpendicular as possible. *Id.,* pp 362-363.

In this case, surveyor Ralph Van Riper testified that he examined the deed describing plaintiff's property, established the parcel's parameters, and extended a line from the water's edge at right angles to the center of the lake. This was consistent with the method set forth in *Gregory, supra.* After performing the necessary measurements, Van Riper concluded that the entire boat slip was situated within plaintiff's property description. He also checked plaintiff's western property line against defendant's adjacent eastern property line, defined in its deed as "North 38 degrees 32 min-

utes West," and determined that the lines were common. Defendant's surveyor, Steve Vallier, did not testify that a different riparian line existed or that Van Riper's calculations were incorrect. On the basis of this evidence, we decline to disturb the trial court's findings concerning the location of plaintiff's western riparian boundary or its characterization of the parties' common property line as "the Easterly boundary of Defendants' property."

Defendant also contends that the trial court erred in ruling before trial that defendant had no property interest in the west forty feet of the boat slip by means of adverse possession, prescriptive easement, or acquiescence and that the court compounded this error by precluding defendant from presenting evidence to support these claims at trial. Again, we disagree.

To establish adverse possession, the claimant must show that its possession is actual, visible, open, notorious, exclusive, hostile, under cover of claim or right, and continuous and uninterrupted for the statutory period of fifteen years. *Thomas v Rex A Wilcox Trust,* 185 Mich App 733, 736-737; 463 NW2d 190 (1990). An easement by prescription requires similar elements, except exclusivity. *St Cecilia Society v Universal Car & Service Co,* 213 Mich 569, 576; 182 NW 161 (1921). Mutual use or occupation of property with the owner's permission is insufficient to establish adverse possession. *Rozmarek v Plamondon,* 419 Mich 287, 294; 351 NW2d 558 (1984). Further, permissive use of property, regardless of the length of the use, will not result in an easement by prescription. *Banach v Lawera,* 330 Mich 436, 441; 47 NW2d 679 (1951). The doctrine of acquiescence provides that, where adjoining property owners acquiesce to a boundary line for a period of at least fifteen years, that line becomes the actual boundary line. *McQueen v*

*Black,* 168 Mich App 641, 644; 425 NW2d 203 (1988).

In this case, correspondence between the parties, the deposition testimony of Miles McKee, and the affidavit of George Nietering all established that both the plaintiff and the defendant understood that the boat slip was on plaintiff's property and that defendant and its predecessor in interest used the slip with plaintiff's permission until 1989. Defendant's use with plaintiff's permission of property that was acknowledged to belong to plaintiff could not, as a matter of law, entitle defendant to acquire property rights in the west forty feet of the slip by adverse possession, prescriptive easement, or acquiescence. *Rozmarek, supra; Banach, supra; McQueen, supra.* Accordingly, we find no error.

Defendant's remaining claims are relevant to the trial court's determination regarding defendant's reasonable use of the boat slip. Defendant contends that limiting its reasonable use to loading and unloading vessels and prohibiting defendant from mooring its vessels for more than a week is inequitable under the facts of the case, ignores both the needs of defendant's business and the industrialized nature of Muskegon Lake, and fails to take into account that defendant's navigational rights supersede plaintiff's bottom land rights. Contrary to these arguments, we conclude that the trial court did not err in defining defendant's reasonable use of the boat slip.

As determined by the trial court, defendant is a riparian owner on Muskegon Lake because its pier is accreted to the shoreline and its north end abuts the lake. Use of the water by riparian owners is governed by principles of reasonableness. *Pierce v Riley,* 81 Mich App 39, 45; 264 NW2d 110 (1978). Thus, where there are several riparian owners on

an inland lake, they may use the surface of the whole lake for boating, swimming, fishing, and other similar riparian rights, as long as they do not interfere with the reasonable use of the waters by other riparian owners. *Id.* The definition of reasonable use depends on the facts of the case. *Hoover v Crane,* 362 Mich 36; 106 NW2d 563 (1960). In *Three Lakes Ass'n v Kessler,* 91 Mich App 371; 285 NW2d 300 (1979), however, this Court formulated a three-pronged test for determining reasonableness based on *Thompson v Enz,* 379 Mich 667; 154 NW2d 473 (1967), and *Hoover, supra:*

> First, attention should be given to the size, character and natural state of the water course. Second, consideration should be given the type and purpose of the uses proposed and their effect on the water course. Third, the court should balance the benefit that would inure to the proposed user with the injury to other riparian owners. [*Three Lakes, supra,* p 377.]

The trial court's findings and decisions with respect to the question of reasonable use will not be disturbed by this Court unless we are convinced we would reach a different result. *Id.,* p 375.

Here, Muskegon Lake is approximately six to seven miles long and one-half to two miles wide. Its natural state has given way to industrial development. Defendant's proposed uses included permanent docking and mooring privileges along the eastern side of its pier, and it contended that such privileges were essential to its business. However, this contention is severely undercut by both defendant's history of using the eastern side for non-business purposes, such as mooring a submarine, and its business practice of storing unused vessels at other facilities. Moreover, the record supports

the conclusion that the court properly balanced the benefit that would inure to defendant with the injury to it and other riparian owners. Defendant still retains reasonable use of its dock for loading and unloading vessels and can still dock vessels on the north and west sides of its pier. Accordingly, we cannot say we would have reached a different result concerning defendant's reasonable use had we been sitting as the trial court. *Id.*

We next turn to plaintiff's cross appeal. Plaintiff asserts that the trial court erred in failing to order the removal of the encroaching section of defendant's pier, in failing to award plaintiff money damages for defendant's trespass onto its riparian property in the slip, and in failing to prevent defendant from making any use of its eastern dock adjoining the slip. We disagree.

As noted above, the court correctly determined that defendants were entitled to the reasonable use of their dock. With respect to plaintiff's other claims, we are satisfied that the trial court's award was appropriate. The $5,000 award appears to constitute trespass damages intended to compensate plaintiff for the dock encroachment, which is 3.06 feet at its widest point. Plaintiff fails to explain or show on appeal that this award was insufficient or inequitable, and its argument that the court permitted defendants to "purchase" a sliver of its lake bed is meritless.

The trial court also determined that the encroaching section of the pier would have to be dismantled if defendant refused to pay the trespass damage award; thus, the court's order provides a contingency to accomplish the removal of the offending structure sought by plaintiff. Again, plaintiff fails to explain on appeal why this contingency is inequitable or unsupportable in law.

While plaintiff points out that a mandatory injunction ordinarily will be granted to compel the removal of an intentional encroachment, *Kratze v Independent Order of Oddfellows*, 442 Mich 136, 145; 500 NW2d 115 (1993), here there was insufficient evidence that the encroachment was intentional to justify a removal order. We therefore decline to find the trial court's order improper or inadequate.

Affirmed.