*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MV HALE, LLC, by its registered agent, MICHAEL
NUNEZ, JOHN BARBAY and ANN MARIE
BARBAY, STEVEN BROSTEK and CATHERINE
BROSTEK, JEAN M. HARDESTY and JACK E.
HARDESTY, MICHAEL E. THOMPSON and
CAROL M. THOMPSON, FRED TRIPLETT and
MELINDA TRIPLETT,

        Plaintiffs-Appellants,

v

CHRISTOPHER D. MULDOON, LAURIE
MULDOON, LEON A GRIBECK AND NANCY A.
GRIBECK, WALLACE E. ACKLEY AND
PATRICIA L. ACKLEY,

        Defendants-Appellees.

UNPUBLISHED
July 13, 2023

No. 360904
Iosco Circuit Court
LC No. 21-2905-CH

Before: RIORDAN, P.J., and MARKEY and YATES, JJ.

PER CURIAM.

In 1989, plattors dedicated two waterside lots within the Iroquois Sands subdivision for use by Iroquois Sands residents. Since then, for more than 30 years, some residents of Iroquois Sands have used those lots for seasonal docking of their boats. Recently, however, plaintiffs filed suit to enjoin that use of the two lots, known as Floyd Park and Sand Park, by residents of Iroquois Sands. The trial court granted summary disposition to defendants, who are all residents of Iroquois Sands, thereby permitting their continued use of the lots for docking. On appeal, we affirm that decision, which allows docking to proceed unhindered at Floyd Park and Sand Park.

## I. FACTUAL BACKGROUND

On January 26, 1989, 55 lots were created to form the Iroquois Sands subdivision between Floyd Lake and Sand Lake in Iosco County. Plaintiffs and defendants all own property within the Iroquois Sands subdivision. Iroquois Sands includes a dedication of two areas—Floyd Park and

Sand Park—for exclusive use by the property owners. Although the dedication expressly provides that "Floyd Park and Sand Park are private and for the use of Iroquois Sands lot owners and any future contiguous subdivision where title is traceable to this proprietor[,]" the dedication does not say anything about the lot owners' riparian rights of erecting docks, hoists, and/or the mooring of boats or other vessels on the beach. In recent years, several property owners, including defendants, have erected a dock and a boat hoist, and they have moored boats, jet skis, and pontoon vessels on the beach and in the waters along the parks.

On October 27, 2020, plaintiffs' counsel sent correspondence to each lot owner within the subdivision requesting cooperation in using the parks for their designated purposes and refraining from engaging in marina-type activities. But when the use of private docking continued unabated, plaintiffs filed this suit against the property owners who were purported transgressors. Defendants moved for summary disposition pursuant to MCR 2.116(C)(4), (C)(7), and (C)(8), contending that the dedication does not operate simply to benefit plaintiffs or only to restrict defendants. Instead, they insisted the dedication operates to convey to all subdivision co-owners an unrestricted right to use Floyd Park and Sand Park. Additionally, because defendants were not expressly prohibited from using docks and boats, plaintiffs' claim should be dismissed for lack of an actual controversy. In response, plaintiffs reiterated that the land was dedicated for "parks," so all marina-type activity was inconsistent with that concept of a "park."

On March 2, 2022, the trial court conducted a hearing on defendants' motion for summary disposition. The trial court acknowledged that it was limited to the language of the dedication and if that language is clear and unambiguous, the court had to apply the language as written. Plaintiffs argued that the clear language of the dedication limited the permissible use of Floyd Park and Sand Park to that of a "park." After hearing oral argument, the trial court granted defendants summary disposition from the bench and dismissed the action on March 18, 2022, thereby allowing docking to continue at Floyd Park and Sand Park. This appeal of right followed.

## II. LEGAL ANALYSIS

Plaintiffs challenge the trial court's rulings that all Iroquois Sands lot owners have riparian rights to maintain and use docks at the two parks and that doing so constitutes a reasonable use of those rights. The trial court rendered those rulings in awarding summary disposition to defendants, and "[w]e review de novo a trial court's decision on a motion for summary disposition." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). Applying that standard,[1] we must address defendants' claim of riparian rights to maintain and use docks at the parks.

Riparian land refers to land bounded by a natural water source.[2] *2000 Baum Family Trust v Babel*, 488 Mich 136, 166; 793 NW2d 633 (2010). One exclusive right afforded to riparian land

---

[1] Although the scope of a dedication of property has been described as a question of fact, see, e.g., *Dyball v Lennox*, 260 Mich App 698, 703; 680 NW2d 522 (2003), the summary disposition award in this case requires us to apply de novo review to the trial court's rulings.

[2] "Strictly speaking, land which includes or abuts a river is defined as riparian, while land which includes or abuts a lake is defined as littoral[,]" *Thies v Howland*, 424 Mich 282, 288 n 2; 380

owners is the right to erect and maintain docks along the owner's shore. *Id*. Riparian rights cannot be transferred to a non-riparian land owner. *Thompson v Enz*, 379 Mich 667, 682, 686; 154 NW2d 473 (1967). The scope of a dedication of land is defined by the language of the dedication and the facts and circumstances that existed at the time of the dedication. *Thies v Howland*, 424 Mich 282, 293; 380 NW2d 463 (1985). To define the permissible uses of dedicated land, a court must answer two questions: (1) whether the dedication includes or allows for that disputed use; and (2) whether that use is reasonable. *Dobie v Morrison*, 227 Mich App 536, 541; 575 NW2d 817 (1998). Here, both of those questions are in dispute, so we must answer each of the two questions in turn.

## A. DEDICATION

On many occasions, courts have addressed riparian rights of land owners under Michigan property laws in general and the Land Division Act (LDA), MCL 560.101 *et seq*., in particular. In 2004, our Supreme Court issued opinions explaining how to interpret dedications made before and after the effective date of the LDA, i.e., January 1, 1968. "[D]edications of land for private use in plats before [the LDA] took effect convey at least an irrevocable easement in the dedicated land." *Little v Hirschman*, 469 Mich 553, 564; 677 NW2d 319 (2004). But dedications of land for private use in plats after the LDA took effect convey a fee simple interest to the donees. *Martin v Beldean*, 469 Mich 541, 548; 677 NW2d 312 (2004). Thus, as we have explained, "a private dedication in a plat made before January 1, 1968, conveys an irrevocable easement, whereas a private dedication in a plat after January 1, 1968, conveys a fee interest." *Redmond v Van Buren Co*, 293 Mich App 344, 354; 819 NW2d 912 (2011).

One provision of the LDA, MCL 560.253(1), figures prominently in this case. According to that statute:

> When a plat is certified, signed, acknowledged, and recorded as prescribed in this act, every dedication, gift or grant to the public or any person, society or corporation marked or noted as such on the plat shall be deemed sufficient conveyance to vest fee simple of all parcels of land so marked and noted, and shall be considered a general warranty against the donors, their heirs, and assigns to the donees for their use for the purposes therein expressed and no other.

Pursuant to that statute, "a dedication is not presumed to be broad, requiring express words in the dedication to limit its scope." *2000 Baum Family Trust*, 488 Mich at 159-160. "Rather, in all its versions, the statute has taken the opposite approach." *Id*. at 160. "The scope of the dedication is strictly limited to the words expressly conveyed," which means "the purposes 'therein designated' and 'no other use or purpose whatever.' " *Id*.

In this case, the language of dedication from 1989 states:

> Floyd Park and Sand Park are private and for the use of Iroquois Sands lot owners and any future contiguous subdivision where title is traceable to this proprietor . . .

---

NW2d 463 (1985), but "the term 'riparian' is often used to describe both types of land," *id*., so we will use that term in framing the dispute in this case.

Lots and parks embracing any waters of Sand Lake, Floyd Lake and the shallows or the channel between said lakes are subject to the correlative rights of other riparian owners and to the public trust in these waters . . . .

Plaintiffs insist that because that dedication does not expressly refer to either maintaining docks or docking boats at Floyd Park and Sand Park, such uses are not within the scope of the dedication, as interpreted under the LDA, MCL 560.253(1). In contrast, defendants claim that the dedication conveyed a fee simple interest to them (and all other lot owners in the Iroquois Sands subdivision), so they enjoy "all the attendant riparian rights[,]" including the right to maintain and use docks.

Riparian-rights cases usually involve dedications of easements for access to water, and our Supreme Court has noted that those who benefit from such easements are entitled to exercise some rights that are ordinarily exclusively riparian. *Delaney v Pond*, 350 Mich 685, 686; 86 NW2d 816 (1957). Riparian rights are property rights, *2000 Baum Family Trust*, 488 Mich at 166, and those "exclusive rights . . . include the right to erect and maintain docks, as well as to permanently anchor boats off the shore." *2000 Baum Family Trust*, 488 Mich at 166. We have issued an unpublished decision that favors defendants on this matter. See *Hi-Lo Heights Lakefront Prop Owners Ass'n v Columbia Twp*, unpublished per curiam opinion of the Court of Appeals, issued December 15, 2009 (Docket No. 286493), p 2.[3] There, we ruled that when a lakeside park is conveyed to all lot owners of a subdivision, the lot owners are riparian-rights holders with the right to maintain docks. *Id*. As we stated, "because the lot owners owned the park, they have the right to use the park in a reasonable manner, which includes placing docks and mooring boats, as long as they do not deviate from the intentions of the grantors." *Id*. We find the reasoning in that decision persuasive, so we shall apply that principle in this case to conclude that Floyd Park and Sand Park were dedicated as riparian land in fee simple to all the Iroquois Sands lot owners, so all the Iroquois Sands lot owners have riparian rights that encompass the rights to maintain and use docks at those two parks.

B. REASONABLE USE

Use of the water by riparian owners is governed by principles of reasonableness. *Pierce v Riley*, 81 Mich App 39, 45; 264 NW2d 110 (1978). Uses permitted by a dedication's scope "must not unreasonably interfere with [other lot owners'] use and enjoyment of their property." *Dobie*, 227 Mich App at 541; see also *Thies*, 424 Mich at 289. The concept of "reasonable use" turns on the facts of the case. *Hoover v Crane*, 362 Mich 36; 106 NW2d 563 (1960). In *Three Lakes Ass'n v Kessler*, 91 Mich App 371, 377; 285 NW2d 300 (1979), we devised a three-part test for assessing reasonable use:

First, attention should be given to the size, character and natural state of the water course. Second, consideration should be given the type and purpose of the uses proposed and their effect on the water course. Third, the court should balance

---

[3] "Although unpublished opinions of this Court are not binding precedent, they may be considered instructive or persuasive." *Sau-Tuk Indus, Inc v Allegan Co*, 316 Mich App 122, 137; 892 NW2d 33 (2016).

the benefit that would inure to the proposed user with the injury to other riparian owners.

Application of that three-part test confirms that defendants are engaging in reasonable use of Floyd Park and Sand Park by maintaining and using docks there.

First, Floyd Lake is approximately 40.7 acres, so it is much smaller than Sand Lake, which is approximately 244 acres. Correspondingly, Floyd Park is much smaller than Sand Park, which has approximately 300 feet of beachfront. Permitting docks to be maintained and used at parks on lakes of that size and natural state seems eminently reasonable. Second, those two lakes have other access points. Floyd Lake has a boat launch and Sand Lake has another park that is not designated for private use by the Iroquois Sands subdivision residents. Moreover, defendants point to a letter from the original proprietor, Fred McAndrew, to establish that both parks were intended for boats. Beyond that, permitting maintenance and use of docks has no demonstrated harmful impact. Third, balancing the benefits of docks against the burdens placed upon other lot owners militates in favor of docks. Docks provide landlocked lot owners with seasonal access to the lakes. There are fewer than 15 lot owners in the Iroquois Sands subdivision who do not own lakefront lots. All the other lot owners can erect docks on their own lots. Affording a few landlocked lot owners access to the lakes seems perfectly reasonable. Therefore, in the absence of proof that the longstanding practice of maintaining and using docks at the two parks unreasonably infringes on the rights of the other lot owners, those actions can properly be deemed reasonable in accordance with the dedication.

Plaintiffs call it unreasonable to afford all lot owners the right to erect docks in Floyd Lake and Sand Lake. Plaintiffs assert that there is only enough room at Sand Park for 11 docks and only enough room for 4 docks on Floyd Park, as illustrated by the following photographic evidence:



Plaintiffs also insist that docks not only reduce the available beach space for those who would like to enjoy the parks without boat traffic, but also increase the risk of accidents. Plaintiffs thus argue that no lot owner should have controlling rights to the two parks that disadvantage other lot owners.

But the record contains no evidence that allowing docks infringes on the rights of other lot owners. For more than 30 years since the dedication, there has never been full occupancy of docks erected in a single season. Accordingly, with history as our guide, we conclude that the trial court correctly deemed defendants' use of Floyd Park and Sand Park reasonable.

Affirmed.

/s/ Michael J. Riordan
/s/ Jane E. Markey
/s/ Christopher P. Yates