*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JOSEPH C. FINCH and DENISE J. ZIEBARTH,

        Plaintiffs-Appellees,

v

MAURICE GENNARI, SANDRA GENNARI, and
HERBERT RICHTER,

        Defendants-Appellants.

UNPUBLISHED
September 09, 2025
11:08 AM

No. 371747
Oakland Circuit Court
LC No. 2022-194921-CH

Before: GADOLA, C.J., and MARIANI and TREBILCOCK, JJ.

PER CURIAM.

Defendants appeal as of right the trial court's amended judgment declaring the location of
the land and riparian boundary lines dividing the parties' properties and declaring plaintiffs as the
exclusive owners of the riparian area adjacent to plaintiffs' property as designated in the judgment.
We affirm.

## I. FACTS

This case involves a dispute regarding the parties' riparian rights with respect to their
adjacent lakefront properties. Plaintiffs, Joseph Finch and Denise Ziebarth, own property on Loon
Lake in Waterford at 2601 Silverside Road. Defendants Maurice and Sandra Gennari own
property at 3106 Barnes Road, also fronting on Loon Lake. Although the parties' properties are
adjacent, the properties are part of different plats.

Loon Lake is roughly oblong from east to west. The parties' properties are located on the
east end of the lake where the shoreline curves eastward slightly to form a slight bay. The parties'
properties are roughly rectangles at right angles to each other. The parties share a common
boundary line located on the west side of plaintiffs' property and the east side of defendants'
property. The parties' properties each have footage on the slightly-curved shoreline. Plaintiffs
assert that their property rights extend from the shoreline of their property out into the lake in a
pie-shaped parcel; defendants assert that their property rights extend out from their property up the
curved shoreline, which would include the land under the water in front of plaintiffs' property.

-1-

In June 2021, plaintiffs purchased their Loon Lake property, which included a boat dock located in the water at the shoreline of the property. When they moved into the home in July 2021, another small dock had been installed about one foot from plaintiffs' dock and a boat was docked there. Plaintiff Finch learned that the small dock and boat belonged to defendant Herbert Richter, and advised Richter that the boat and dock were trespassing on plaintiffs' property. Richter responded that defendant Maurice Gennari owned the property in question and had authorized Richter to put his boat in that location. Finch told Richter that the property belonged to plaintiffs and told Richter to remove his boat and dock.

In the fall of 2021, Richter removed his boat and dock. When plaintiffs began to install a boat lift for their boat, however, Gennari threatened to call the police and to sue the installer. The boat lift installer therefore left without installing plaintiffs' boat lift.

In November 2021, plaintiff Ziebarth saw Gennari directing men who were installing poles next to plaintiffs' dock to block access to the dock. When Ziebarth confronted Gennari and told him that he was on plaintiffs' property, Gennari became very angry and told her that she could not simply move in and take land from him. Plaintiffs removed the poles when Gennari refused to do so. In March 2022, Ziebarth saw Gennari directing men to move one of Gennari's boat lifts from Gennari's waterfront to a spot next to plaintiffs' dock. Ziebarth again confronted Gennari and told him to remove his boat lift from plaintiffs' waterfront.

In the spring of 2022, plaintiffs hired Kieft Engineering to survey plaintiffs' property. Plaintiffs then initiated this action alleging trespass to real property and nuisance, and seeking declaratory and injunctive relief. Specifically, plaintiff sought a declaration of the riparian boundaries of plaintiffs' property and of plaintiffs' exclusive right to use their riparian zone of ownership. They also sought injunctive relief requiring defendants to remove Richter's boat and boat docking station from the area within the riparian boundary of plaintiffs' property and to cease trespassing on plaintiffs' property.

Defendants filed a counterclaim also seeking declaratory and injunctive relief. The counterclaim alleged trespass and nuisance and sought the removal of plaintiffs' dock from the waterfront area in front of plaintiffs' property, which defendants claimed was within the riparian boundary of defendants' property. Defendants' counterclaim relied upon a 2019 survey report prepared by Robert. R Droullard indicating that defendants' riparian rights extended into the water in front of plaintiffs' property.

During the bench trial, Timothy Hart of Kieft Engineering testified that he conducted a land survey of plaintiffs' property on behalf of plaintiffs. Hart testified that he had surveyed plaintiffs' property in 2014 for a prior purchaser, surveyed it again in 2015 for then-owner Terry Warden, who later sold the property to plaintiffs, and again surveyed the property in 2022 for plaintiffs. Hart testified that in 2022, plaintiffs asked specifically that he establish and mark the west and south property lines of plaintiffs' property. Hart testified that because he knew that the west and south property lines were being contested, his crew searched and found the government section corner that both plats were tied to, as well as additional monumentation and the stakes from a 2010 survey. Hart testified that all the markers aligned in agreement with the boundary line

Hart's crew had staked in 2015. Hart also testified that he found incongruencies in the survey prepared by Droullard on behalf of defendants.

Corey Hughes testified that he is a licensed professional land surveyor and also a riparian surveyor. Hughes conducted a riparian survey of plaintiffs' property on behalf of plaintiffs. Hughes testified that Loon Lake is a natural lake and not a man-made lake; he based his opinion on the 1817 Government Land Office (GLO) survey which depicts a rough drawing of Loon Lake, albeit not in its precise location. Hughes explained that at that time the government surveyors were not instructed to survey lakes, but instead only represented lakes on the GLO surveys in rough approximation. Hughes also testified that based upon the established property lines of Hart's survey, Hughes determined that plaintiffs' riparian rights covered a pie-shaped section immediately adjacent to the shoreline of plaintiffs' property and extended out to the radius point in front of the parties' properties located along the centerline of the lake. He testified that he calculated the area of plaintiffs' riparian rights following the method discussed by this Court in *Heeringa v Petroelje*, 279 Mich App 444; 760 NW2d 538 (2008).

Timothy Lapham testified that he is a licensed professional land surveyor and professional engineer, and that he prepared a riparian survey of the parties' properties at the request of defendants. Lapham testified that he "retraced" the Droullard land survey and then conducted a riparian survey. He testified that he determined that the lake was not riparian based in part on the fact that Loon Lake is not accurately represented on the 1817 GLO survey. Lapham agreed, however, that in the 1800s, government surveyors did not survey the lakes. Lapham testified that he also based his opinion on the fact that the federal government did not reserve the right to the bottomland of the lake when originally selling the land now bordering Loon Lake, which indicated to Lapham that there was not a lake in the area of the land sold. He also relied on a "dock survey."

After the bench trial, the trial court issued its opinion and order finding in favor of plaintiffs and dismissing defendants' counterclaim. The trial court adopted the conclusions of Corey Hughes, plaintiffs' expert witness, that Loon Lake is a riparian lake and that plaintiffs' riparian rights include the pie-shaped section of Loon Lake immediately adjacent to the shoreline of plaintiffs' property and extending out to the radius point in front of the parties' properties located along the centerline of the lake, as described and depicted in plaintiffs' exhibits. The trial court thereafter entered an amended judgment granting plaintiffs declaratory relief consistent with the trial court's opinion, declaring the location of the land and riparian boundary lines dividing the parties' adjacent properties, and declaring plaintiffs as the exclusive owners of the riparian area adjacent to plaintiffs' property as designated in the judgment. Defendants now appeal.

## II. DISCUSSION

### A. RIPARIAN RIGHTS

Defendants contend that the trial court erred by finding that Loon Lake is a riparian lake. We disagree.

We review de novo a trial court's equitable decisions,[1] while reviewing the trial court's findings of fact for clear error. *Save Our Downtown v City of Traverse City*, 343 Mich App 523, 543; 997 NW2d 498 (2022). A claim of riparian rights involves a question of common law that this Court reviews de novo. *Holton v Ward*, 303 Mich App 718, 726; 847 NW2d 1 (2014).

"Land which includes or is bounded by a natural water course is defined as riparian," and conveys riparian rights. *Thies v Howland*, 424 Mich 282, 287-288; 380 NW2d 463 (1985). Although the term "riparian" often is used to describe any land bounded by water, land that includes or borders upon a river is "riparian," while land that includes or borders on a lake[2] is termed "littoral." *Id*. at 288 n 2. Michigan case law often applies the term "riparian" to refer to land bordering either a river or a lake, however. See *Morse v Colitti*, 317 Mich App 526, 536 n 6; 896 NW2d 15 (2016); see also *Holton*, 303 Mich App at 726.

Riparian rights are the special rights of the riparian landowner to use the water in a waterway adjoining the landowner's property, including the right to construct and maintain docks and permanently anchor boats off the owner's shore. *Morse*, 317 Mich App at 536, citing *2000 Baum Family Trust v Babel*, 488 Mich 136, 166; 793 NW2d 633 (2010). In Michigan, riparian rights attach to land that abuts or includes a natural watercourse, meaning a "natural stream of water fed from permanent or periodical natural sources and usually flowing in a particular direction in a defined channel, having a bed and banks or sides, and usually discharging itself into some other stream or body of water." *Holton*, 303 Mich App at 726 (quotation marks and citation omitted). Riparian rights do not attach to property adjoining a man-made body of water, such as a canal, drainage ditch, or aqueduct, *id*., nor to lands covered by the Great Lakes, *West Michigan Dock & Market Corp v Lakeland Investments*, 210 Mich App 505, 509; 534 NW2d 212 (1995).

Defendants in this case contend on appeal that neither party has riparian rights arising from their property ownership on Loon Lake because Loon Lake is not a natural body of water.[3] Defendants' expert, Timothy Lapham, testified at trial that because Loon Lake does not appear on the 1817 GLO Survey, it must be a man-made lake that was created in some unknown manner after 1817. The trial court rejected this reasoning, finding that absent evidence to the contrary, Loon Lake is a natural lake. The trial court reasoned:

> The parties' experts agree that in the 1800s (1817 in this instance) federal government surveys depicted only roughly but not necessarily precisely the location of inland lakes. The experts agree the GLO surveyors did not take specific measurements such as by metes and bounds or traverse lines in the GLO surveys.

---

[1] An exception is a trial court's decision to grant injunctive relief, which this Court reviews for an abuse of discretion, *Dep't of Environmental Quality v Gomez*, 318 Mich App 1, 32; 896 NW2d 39 (2016). In this case, the trial court granted declaratory relief but not injunctive relief.

[2] Littoral also refers to land situated on the sea shore. *Merriam-Webster's Collegiate Dictionary* (11th ed).

[3] We note that this position is contrary to defendants' counterclaim that alleged that the bottomland of Loon Lake in front of plaintiffs' property was within defendants' riparian property.

The 1817 GLO survey of the area referencing these parties' (except [defendant] Richter) properties contains sketches of lakes near, but not precisely at the properties' locations. Corey Hughes opined, given his 60 years of reading GLO surveys, that the lake, now known as Loon Lake, is one of the "roughly" depicted lakes in that GLO survey.

Despite agreeing that GLO surveyors did not take specific measurements of lakes to mark them precisely in their surveys, Mr. Lapham opined that since the GLO survey depicts no lake precisely in the area where the parties' properties are, therefore, no lake was there originally. Consequently, Mr. Lapham concludes that the lake that is there now must be man-made and non-riparian.

Mr. Lapham also testified that the federal government, when originally conveying property (aka "patent"), reserved unto itself any bottomlands of lakes on the demised premises. Mr. Lapham reasoned that, since the patent conveying the land now owned by the parties contained no such bottomland reservation, there must have been no lake there at the time of the patent and, again, therefore, the lake that is there now must be man-made, non-riparian.

Given that the experts agree that the GLO surveyors did not take specific measurements of lakes, but only generally depicted them in those surveys, it is no proof, therefore, in any particular patent that no lake in the precise area and no express bottomland reservation in the patent means no lake existed in the patented and demised property. It is equally plausible that a lake (for example, Loon Lake) was on that property at the time of the GLO survey; however, it was depicted – roughly located – on that survey elsewhere. Furthermore, whether the GLO survey happened to depict the lake location accurately or not, it is judicially noticeable that erosion, reliction, accretion and other acts by mother nature may alter lakes' configurations and precise shorelines over time. These factors persuade the court that Loon Lake was present in 1817 at the location of the parties' properties and is depicted though not precisely located in the 1817 GLO survey.

Seemingly, proving an inland lake is man-made is easier than proving it is natural. A man-made lake can be traced back to an identifiable human event and, consequently, to an identifiable and recent, rather than geologic, point in time.

Defendants have filed a counter-complaint in this case. Therefore, the burden of proof rests equally upon the parties; plaintiffs to prove Loon Lake is natural a defendants to prove that Loon Lake is man-made. Plaintiffs have met their burden; defendants have not.

Given Mr. Lapham accepts the premise that GLO surveyors did not take specific measurements of lake boundaries, his opinion that "no lake on the GLO survey means no lake was there" is simply untenable.

Mr. Lapham also surmised that various tax records and other plats around Loon Lake belie littoral/riparian ownership. These tax records and plats are equivocal in

and of themselves. And, given the parties' property line drawings to the shoreline only (not out into the lake) and the description language in their own plats, the bottomland tax records and other plats are also equivocal collectively.

Given the experts agree the federal government only roughly identified inland lakes in its 1800 GLO surveys, the depiction of lakes in the 1817 GLO survey roughly in the vicinity of the parties' properties, nature's effect upon lakes and shorelines, the absence in this trial of likely easily available – maybe even dispositive – evidence whether Loon Lake was man-made, this court is persuaded and finds Loon Lake is a natural, not man-made lake, and plaintiffs, as abutting property owners, are littoral/riparian owners.

In this case, the trial court's decision was based largely upon its consideration of the testimony of the experts who testified before it. We defer to the trial court's superior ability to judge the credibility of the expert witnesses who appear before it. See *Dep't of Environmental Quality v Gomez*, 318 Mich App 1, 37; 896 NW2d 39 (2016). Further, it is the responsibility of the factfinder to determine the weight given to trial testimony. *King v Reed*, 278 Mich App 504, 522; 751 NW2d 525 (2008). The trial court in this case adopted the survey and opinion of plaintiffs' expert Corey Hughes, and rejected that of defendants' expert Timothy Lapham, which the trial court noted included Lapham's opinion that the residents of Loon Lake did not have riparian rights, but instead had acquired property rights by means such as easements or adverse possession based upon their long-term use of the waterfront. The trial court rejected Lapham's theory, declining to "adjudge this case via an unpled equitable doctrine, that these tax-paying owners of bottomlands are now burdened with dock-easements for these parties, or worse, that they lost their property to them altogether." We find no error in the trial court's acceptance of Hughes' opinion and methodology.

We conclude that the trial court did not err by finding that Loon Lake is a natural lake. The parties' experts agreed that the location of Loon Lake likely was not accurately depicted on the 1817 GLO survey because the surveyors were not instructed to survey the exact locations of lakes. The fact that it is not precisely located on the 1817 GLO survey therefore does not establish that the lake was man-made, and defendants did not otherwise establish that it is man-made. Because Michigan law is clear that "riparian rights adhere to land that abuts a natural watercourse," *Holton*, 303 Mich App at 721, the trial court did not err by finding that plaintiffs have riparian rights arising from their Loon Lake property.

The trial court also did not err when determining the riparian boundaries of plaintiffs' property. The title of an owner of riparian land extends to the middle line of an inland watercourse; that is, the property owner owns the bottomland of the lake or stream bordering the property to the centerline. *West Michigan Dock*, 210 Mich App at 509. When a lake is oblong and affected by accretion,[4] riparian boundaries are determined by drawing a line "from the point where the

---

[4] Accretion in this context is "the increase of land by the action of natural forces." *Merriam-Webster's Collegiate Dictionary* (11th ed).

property line met the original lakeshore to a median center line of the lake as nearly perpendicular as possible." *Id*. at 510; see also *Heeringa*, 279 Mich App at 450.

In this case, surveyor Corey Hughes testified that he followed the method of riparian surveying set forth in *Heeringa* when ascertaining the area of plaintiffs' riparian rights. Hughes described his methods and calculations in detail and was subject to cross-examination and questioning by the trial court. The trial court thereafter found, in pertinent part:

4. The Plaintiffs and the Gennari Defendants are riparian landowners whose respective properties abut Loon Lake in Waterford, Michigan.

5. The Court has thoroughly reviewed both the land survey dated April 12, 2022 and June 22, 2022 submitted by the Plaintiffs prepared by Kieft Engineering . . . and the riparian survey submitted by the Plaintiffs dated June 25, 2022 prepared by Corey Hughes . . . and finds both surveys to be persuasive, comprehensive, credible and reliable.

6. Both surveys take into account historical deeds, physical features, and relevant legal principles governing the preparation of land and riparian surveys.

7. The Plaintiffs have demonstrated by a preponderance of evidence the accuracy of the location of the land and riparian boundaries established in the Kieft Engineering and Corey Hughes surveys.

Defendants did not present evidence that either Hart's or Hughes' calculations, measurements, or methods were incorrect. We therefore decline to find that the trial court erred in its determination of the land and riparian boundary lines of the parties' properties.

## B. SCOPE OF THE COMPLAINT

Defendants also contend that the trial court erred by ordering relief beyond the scope of plaintiffs' complaint. Defendants argue that because plaintiffs did not specifically seek to quiet title to their property, the trial court was precluded from ordering that the Hart (Keift Engineering) survey be recorded to establish the location of the boundary lines of the parties' properties. We disagree.

The trial court ordered in its amended judgment, in pertinent part:

2. The location of the East West Boundary line between the Plaintiffs' and Gennari Defendants' properties is hereby established as depicted in the survey prepared by Kieft Engineering on April 12, 2022 and June 22, 2022 revised 5-30-24 per the May 6, 2024 Opinion attached as Exhibit A hereto . . . .

3. The location of the riparian boundary between the Plaintiffs' Property and the Gennari Defendants' Property is hereby established as depicted in the Hughes Survey and attached as Exhibit B as this riparian boundary is a fair and equitable allocation of the Loon Lake shoreline between Plaintiffs and Gennari Defendants.

4. The Plaintiffs are the sole and exclusive owners of the riparian area indicated on the Hughes Survey attached hereto as Exhibit B in the area between the Riparian Bottomlands Apportionment Allocation Line extending into Loon Lake from the northern lot line of Lot 27 and Riparian Bottomlands Apportionment Allocation Line extending into Loon Lake from the area that intersects the shoreline and the East West Line of Lot 1 of Plaintiffs' Property ("Plaintiffs' Zone of Riparian Ownership").

5. Plaintiffs' counsel shall record a copy of this Judgment in the Oakland County Register of Deeds in the chain of title to both Plaintiffs' and Gennari defendants' Properties in order to reflect this Court's Judgment establishing the location of the land and riparian boundary lines respecting the Plaintiffs' and Defendants' Properties.

Under MCR 2.605(A)(1), a court "may declare the rights and other legal relations of an interested party seeking a declaratory judgment" in a case of actual controversy. An "actual controversy" exists under MCR 2.605(A)(1) "when a declaratory judgment is necessary to guide a plaintiff's future conduct in order to preserve legal rights." *Lansing Sch Ed Ass'n v Lansing Bd of Ed (On Remand)*, 293 Mich App 506, 515; 810 NW2d 95 (2011). The purpose of a declaratory judgment is "to enable the parties to obtain adjudication of rights before an actual injury occurs, to settle a matter before it ripens into a violation of law or a breach of contract, or to avoid multiplicity of actions by affording a remedy for declaring in expedient action the rights and obligations of all litigants." *UAW v Central Mich Univ Trustees*, 295 Mich App 486, 496; 815 NW2d 132 (2012) (quotation marks and citation omitted).

Here, plaintiffs' complaint alleged trespass and nuisance and sought in part declaratory relief "declaring the boundaries of the Plaintiffs' Riparian Property and further declaring that Plaintiffs are entitled to the exclusive use of their riparian zone of ownership." Determining plaintiffs' riparian property rights necessitated determining the property boundaries of plaintiffs' land. In response to plaintiffs' complaint, defendants filed a counterclaim alleging trespass and nuisance and seeking declaratory and injunctive relief, also necessitating the trial court determining the boundary lines of the parties' properties.

At trial, the parties' experts testified at length regarding the location of the boundary lines between the parties' properties as a reference point for determining the location of plaintiffs' "riparian zone of ownership." That is, the boundaries of the parties' respective properties was a foundational issue for determining the boundaries of the parties' riparian rights, as is evidenced by the testimony of both parties' experts. Resolving defendants' claims as well as plaintiffs' claims therefore necessitated the trial court ascertaining the location of the parties' property lines. Because a party may not assert as error something the party deemed proper at trial, defendants may not at this late date suggest, "as an appellate parachute," that the trial court could not declare the parties' property boundaries, the very declaration sought by defendants' counterclaim. See *Marshall Lasser, PC v George*, 252 Mich App 104, 109; 651 NW2d 158 (2002).

Affirmed.

/s/ Michael F. Gadola
/s/ Philip P. Mariani
/s/ Christopher M. Trebilcock